880 A.2d 591

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gregory Steven KONTAXES, Appellee.**

Supreme Court of Pennsylvania.

Submitted Nov. 23, 2004.

Decided Aug. 15, 2005.

Nancy Vernon, Esq., for Commonwealth of Pennsylvania.

Jeffrey William Whiteko, Esq., for Gregory Steven Kontaxes.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

1

*OPINION*

Justice SAYLOR.

We granted allocatur in this case to review the Superior Court's holding that the trial court erred in refusing Appellee's plea of guilty but mentally ill on the basis that it was unable to determine beyond a reasonable doubt that Appellee was sane at the time of the offense. For the reasons which follow, however, we do not reach this issue and instead vacate the order of the Superior Court and remand for further proceedings.

On the evening of January 7, 2001, Appellee was returning to his parents' home when he crashed his car into his father's truck, which was parked in the driveway. Appellee entered his parents' house for a short time and then attempted to return to his vehicle. His parents, however, warned him not to drive because he was visibly intoxicated. A verbal altercation ensued between Appellee and his father, who threatened to call the police if Appellee attempted to drive. Appellee then repeatedly beat his 79–year–old father and 73–year–old mother with several rifles that were located in the house. As a result of this attack, Appellee's mother suffered bruised ribs and his father was rendered blind in his left eye and lost the use of his left arm and hand. Later that evening Appellee was arrested and charged with two counts each of aggravated assault, simple assault, and harassment. *See* 18 Pa.C.S. §§ 2702, 2701, and 2709(a)(1), respectively.

Appellee entered a plea of guilty but mentally ill pursuant to Section 314(b) of the Crimes Code. Relevant to the present appeal, Section 314 states as follows:

### § 314. Guilty but mentally ill

(a) **General rule.**—A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

**(b) Plea of guilty but mentally ill.**—A person who waives his right to trial may plead guilty but mentally ill. No plea of guilty but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered . . . .

**(c) Definitions.**—For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):

(1) "Mentally ill." One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

(2) "Legal insanity." At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

18 Pa.C.S. 314.[1]

On December 14, 2001, the trial court, per the Honorable John F. Wagner, Jr., conducted a hearing to determine whether Appellee suffered from mental illness at the time of the incident, and whether he was competent to stand trial. The sole witness was Laszlo Petras, M.D., director of the forensic unit and attending chief psychiatrist at Mayview State Hospital ("Mayview"). Dr. Petras had treated Appellee for schizophrenia at Mayview several years earlier, and had additionally treated him upon his re-admission shortly after the present offense. As to the first issue, Dr. Petras rendered an expert opinion, expressed within a reasonable degree of medical certainty, that Appellee was legally insane at the time of the

---

1. Section 314 was added to the Crimes Code by the Act of December 15, 1982, P.L. 1262, No. 286, which also added Section 9727 to the Sentencing Code. *See* 42 Pa.C.S. § 9727 (pertaining to the disposition of persons found guilty but mentally ill).

offense. *See* N.T. Dec. 14, 2001, at 21. After examining Appellee, Dr. Petras also opined that he was not presently competent to stand trial. Dr. Petras explained, in this regard, that Appellee believed that his attorney was part of a county-wide conspiracy to "put him away," and thus, could not assist in his defense. *See generally Commonwealth v. Uderra,* 580 Pa. 492, 515–516, 862 A.2d 74, 88 (2004) (noting that competency to stand trial is measured according to a defendant's ability to understand the nature and object of the proceedings, and to participate and assist in his defense).

Based upon this testimony, Judge Wagner indicated that, because Appellee was incompetent to stand trial, he was also incompetent to waive any potential insanity defense.[2] Defense counsel agreed, and stated that any valid waiver of the insanity defense would have to "await another day" when Appellee could knowingly advise counsel as to how he wished to proceed. N.T. Dec. 14, 2001, at 33. Judge Wagner then ruled from the bench, rejecting the plea of guilty but mentally ill as he was unable to determine beyond a reasonable doubt that Appellee was not legally insane at the time of the commission of the offense. *See id.* at 34. This ruling was made without prejudice to Appellee's ability to offer the same plea at a future date when he became competent. *See id.* at 35. Thereafter, Appellee remained at Mayview until March of 2002, at which time he was deemed competent to stand trial.

In light of his having gained competence, Appellee filed a motion to reinstate the plea of guilty but mentally ill. The motion came before Judge Wagner, who declined to rule on it because he was no longer the plea and motions judge for the current term of criminal court; instead, via an order dated March 25, 2002, he referred to the matter "to the current plea judge."[3] One week later, on April 1, 2002, Appellee appeared

2. Although Appellee did not submit timely notice of his intention to raise such a defense, *see* Pa.R.Crim.P. 573(C)(1)(b), the trial court granted him leave to provide such notice *nunc pro tunc;* thereafter, Appellee filed the required notice.

3. The record does not reveal why the plea-reinstatement motion came before Judge Wagner in the first instance, in view of his not being the current plea judge.

before then-President Judge (now Senior Judge), the Honorable William J. Franks, and requested a continuance; at that time counsel explained that "we are still attempting to get a hearing scheduled in front of Judge Wagner" to re-offer the plea. N.T. Apr. 1, 2002, at 1–2. Thereafter, on June 3, 2002, Appellee appeared, once again, before Judge Wagner, and again attempted to offer his plea. The following exchange took place between defense counsel and Judge Wagner:

[Counsel]: If the Court would look at the colloquy leading to the [December 14, 2001] order, you even [sic] indicated that he would have to be competent in order to waive the insanity defense in order to proceed with the plea. That's what me and [the prosecutor] have been attempting to do for the past three months is get him before the Court in a competent state to completely waive the defense to proceed with the plea.

The Court: Did [Mayview] not thereafter send him back and say he is now competent?

[Counsel]: They did and when that happened is when I presented the first motion to you to schedule a hearing whereupon he could waive the defense and proceed with the plea.

The Court: You ended up with [the Honorable Conrad B.] Capuzzi.

[Counsel]: You did not want to hear it and Judge Capuzzi did not want to hear it.

The Court: That's because Mr. Kontaxes is not mine forever.

\*       \*       \*       \*       \*       \*

[Counsel]: Where me and [the prosecutor] were, judge, just so you understand, you've already done the [18 Pa.C.S. Section] 314 hearing. Any other judge that took the plea, as I understand the statute, would have to have the hearing all over again to satisfy themselves [sic] relative to the mental illness.

The Court: That's absolutely correct.

[Counsel]: We figured it would make a lot more sense and save the time with the doctor if we had it in front of you.
The Court: I have already denied it based on what took place in front of me. Now if you want to represent that in front of somebody else, that's fine.

N.T. June 3, 2002, at 7–8.

There is no indication in the record that the motion to reinstate the plea of guilty but mentally ill was ruled upon by any other judge;[4] rather, the case proceeded to trial on July 9, 2002, and concluded two days later, at which time the jury found Appellee guilty of all offenses charged. He was ultimately sentenced to an aggregate term of ten-to-twenty years in prison, plus payment of restitution and costs.

Appellee filed a post-sentence motion for a new trial and in arrest of judgment in which he raised several issues, including a claim that the trial court had erred in rejecting his plea of guilty but mentally ill after he was determined to be competent. The trial court denied the motion by order dated October 12, 2002. In an accompanying opinion authored by President Judge Franks, the court refused to render a merits disposition of the claim that it had erred in rejecting Appellee's plea, on the basis that the plea had been heard and ruled upon "by another member of this Court in an order dated December 14, 2001." All of Appellee's other claims were rejected on the merits.

In an unpublished opinion dated June 30, 2003, a divided panel of the Superior Court vacated the judgment of sentence and remanded the case for a new trial. The majority focused its analysis on the trial court's statement, on December 14, 2001, that the basis for its decision to reject Appellee's plea was that it was unable to conclude beyond a reasonable doubt that Appellee was mentally ill rather than legally insane. It suggested that this case presents an issue of first impression, namely, whether the beyond-a-reasonable-doubt standard may

4. In particular, the record does not reveal the exact manner in which then-Judge (now President Judge) Capuzzi handled the motion. The only information along these lines consists of counsel's suggestion, quoted above, that "Judge Capuzzi did not want to hear it."

be utilized in rejecting a plea tendered in accordance with Section 314(b). In this regard, the majority indicated that such standard "is consistent with that which is set forth in Section 314(a), which allows the trier of fact to reject an insanity defense raised by the defendant *at trial,* and instead find the defendant guilty but mentally ill." Superior Court Op. at 7 (emphasis in original). The majority stated, however, that, in contrast to subsection (a), subsection (b) does not indicate any specific degree of proof by which the defendant must demonstrate mental illness at the time of the offense, nor does it require that the defendant be deemed legally sane at the time of the offense. Accordingly, the majority found that the trial court had erred in applying Section 314(a)'s beyond-a-reasonable-doubt requirement in deciding whether to accept Appellee's plea of guilty but mentally ill. The court granted a new trial on this basis, prior to which Appellee could seek to enter a plea.[5]

In a dissenting memorandum, Judge Graci advanced the position that Section 314 does not require a trial court to accept a tendered plea, even if it is satisfied that the defendant was mentally ill at the time of the offense. The dissent noted that the trial court retained discretion to reject Appellee's plea pursuant to Rule 590(A)(3), Pa.R.Crim.P., and opined that the trial court had acted within such discretion because it was merely allowing for a possible jury verdict of not guilty by reason of insanity. *See* Dissenting Mem. at 3. Finally, the dissent concluded that the trial court's actions did not result in any prejudice because, even if Appellee had been permitted to plead guilty but mentally ill, he could still have received the same sentence. *See id.* at 3 n. 5 (citing 42 Pa.C.S. § 9727(b)(1)).

We believe that the Superior Court misapprehended the issue involved in this case. Both the majority and the dissent addressed whether Judge Wagner erred by refusing Appel-

---

**5.** The majority did not reach any of the other issues that Appellee raised, which included assertions that: the verdict was against the weight of the evidence; the trial court erred in refusing to grant a mistrial; and trial counsel was ineffective.

lee's plea at the conclusion of the December 14, 2001 hearing premised upon his application of the beyond-a-reasonable-doubt standard. However, Appellee has never objected to Judge Wagner's determination in that regard; indeed, counsel affirmatively assented to the court's ruling as Appellee was then admittedly incompetent to waive a potential insanity defense. The crux of Appellee's claim is, and has always been, that the trial court erred by refusing to accept his guilty plea *after* he became competent in March of 2002 because, at that time, he could validly waive any insanity defense. *See* Superior Court op. at 3 (reciting the pertinent appellate issue as whether "the trial court err[ed] when it refused to accept the Appellant's plea of guilty but mentally ill *after Appellant was determined to be mentally competent*" (emphasis added)); Motion for a New Trial and Arrest of Judgment, filed August 12, 2002, at 1 (*"Once the Defendant was determined to be competent,* the court erred when it refused to accept the Defendant's plea of guilty but mentally ill." (emphasis added)). Appellee tried several times, without success, to obtain a ruling on his motion to reinstate the plea after regaining competence. The trial court never ruled on the reinstatement motion and, therefore, it never re-employed the beyond-a-reasonable-doubt standard.[6]

In summary, the issue before the Superior Court was whether the trial court abused its discretion in not granting Appellee's plea-reinstatement motion—by failing to rule on it—after Appellee became competent. We are presently without a merits disposition from the Superior Court on this question or any other appellate claim raised by Appellee (*see supra* note 5). Accordingly, we now vacate the Superior

---

**6.** The Superior Court's confusion in this regard may have stemmed from Judge Wagner's June 30, 2002, statement, quoted above, that "I have already denied [the plea] based on what took place in front of me" in December of 2001. *See* Superior Court. op. at 3. This remark evidently pertained only to the original grounds for rejecting the plea, and was not intended to signify that the plea was again being refused on the same basis. This interpretation is supported by Judge Wagner's contemporaneous suggestion that, if Appellee submitted the reinstatement motion to the correct judge, that judge might accept the plea now that Appellee was competent to waive his defense.

Court's order and remand the matter to that tribunal for further proceedings consistent with this opinion.