951 A.2d 329

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Aaron Daniel RABOLD, Appellant.**

Supreme Court of Pennsylvania.

Argued May 13, 2008.

Decided July 23, 2008.

---

Bradley Warren Weidenbaum, Esq., Brodheadsville, for Aaron Daniel Rabold.

David R. Crowley, Esq., Bellefonte, for amicus curiae Pennsylvania Association of Criminal Defense Lawyers.

Colleen Mancuso, Esq., Elmer D. Christine, Jr., Esq., Stroudsburg, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## *OPINION*

Justice SAYLOR.

Appeal was allowed to consider a challenge to a jury instruction explaining the verdict of guilty but mentally ill.

By way of essential background, a verdict of guilty but mentally ill is authorized by Section 314 of the Crimes Code, as follows:

> (a) **General rule.**—A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

\* \* \*

(c) **Definitions.**—For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty by mentally ill):

(1) "Mentally ill." One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

(2) "Legal insanity." At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

18 Pa.C.S. § 314. *See generally Commonwealth v. Kontaxes*, 584 Pa. 1, 2–3, 880 A.2d 591, 592 (2005). As further developed below, in *Commonwealth v. Sohmer*, 519 Pa. 200, 546 A.2d 601 (1988), this Court determined that Section 314(a) does not impose a burden of proof concerning a defendant's mental illness on either party, but rather, is implicated where an insanity defense fails but evidence of the defendant's mental illness nevertheless "preponderates." *See id.* at 212–13, 546 A.2d at 607. The insanity defense is provided for in Section 315 of the Crimes Code, as follows:

(a) **General Rule.**—The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of the evidence that the actor was legally insane at the time of the commission of the offense.

(b) **Definition.**—For purposes of this section, the phrase **"legally insane"** means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or,

if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S. § 315.[1]

After attacking and repeatedly stabbing his brother's fiancée while in her bed, Appellant was charged with attempted homicide, aggravated assault, and possession of an instrument of crime. At the ensuing jury trial, Appellant advanced an insanity defense based primarily upon the testimony of a psychiatrist diagnosing psychotic disorder not otherwise specified, *see* N.T., March 30, 2005, at 87–88, and that of a specialist in environmental medicine to the effect that Appellant suffers from autism, *see id.* at 34–36.[2] Both experts opined that, although Appellant was capable of understanding that he was stabbing the victim and that such actions could kill her, he was incapable of understanding the wrongfulness of this conduct. *See id.* at 36, 83, 88–89. On this basis, the defense psychiatrist opined that Appellant was legally insane under an operative definition congruent with Section 315 of the Crimes Code. *See id.* at 89. In response, the prosecution presented the testimony of a forensic psychiatrist who concurred in the diagnosis of psychotic disorder not otherwise specified, *see* N.T., March 30, 2005, at 124,[3] but expressed the opinion that Appellant was not legally insane. According to the Commonwealth's expert, Appellant was, at the time of his offenses, "mentally ill" under the definition set forth in Section 314 of the Crimes Code, because he lacked substantial capacity to conform his conduct to the requirements of the law. *See id.* at

1. The statutory definition of insanity codifies the common-law *M'Naghten* approach. *See M'Naghten's Case,* 8 Eng. Rep. 718 (1843); *accord* 18 Pa.C.S. § 314(d) ("Nothing in this section shall be deemed to repeal or otherwise abrogate the common law defense of insanity (M'Naghten's Rule) in effect in this Commonwealth on the effective date of this section."). The standard sometimes is referred to as the "right-and-wrong" test. *See* 21 Am.Jur.2d Criminal Law § 53 (2008).

2. Appellant also presented evidence of a long-term history of learning and adjustment disabilities and intervention. *See* N.T., March 30, 2005, at 31.

3. The Commonwealth's expert did not comment on the diagnosis of autism.

130. Further, relevant direct examination of the Commonwealth's expert psychiatrist proceeded as follows:

Q Sir, do you disagree with [the defense psychiatrist] at some point?

A Well, you see, we're both psychiatrists, and we're clinicians, and we've come to the same opinion about the mental state of the diagnosis. Applying that diagnosis to a state of mind—that is a legal test—is where we differ.

[The defense psychiatrist] gives the opinion—and I was listening carefully to him, and he tends to equate knowledge with appreciation. They're not equated. Knowledge in the test is purely cognitive. That is, does a person know intellectually, does he have the knowledge that what he did was wrong.

[The defense psychiatrist] kept saying he could not appreciate, could not appreciate. Appreciate has a culminative or an emotional component that is not cognitive. So when he throws that in there, I get confused because I don't know if he's saying he didn't know what he was doing was wrong or he could not appreciate what he was doing was wrong, and they're both different.

Appreciation is not the legal test of insanity in Pennsylvania. So my opinion is that he did know what he was doing and he knew what he was doing was against the law, that it was wrong and he could get in trouble for it.

The other thing that [the defense psychiatrist] said, I think, so well is that Mr. Rabold at the time, at the millisecond, at the time that he did this, felt that he had to do it. It was something he had to do. That has to do with volition. It doesn't have to do with cognition. So that is not the test of insanity in Pennsylvania, but it is the test of mental illness under a concept in Pennsylvania of guilty but mentally ill.

So I gave the opinion, and I still hold it, that at the time that he stabbed his brother's fiancée that he lacked substantial capacity to conform his conduct to the require-

ments of law. That's the test for mental illness short of insanity.

And because he was mentally ill and because he did what he felt he had to do, he really lacked substantial capacity to control his behavior. But he knew what he was doing, and he knew that it was wrong in my opinion.

N.T., March 30, 2005, at 125–26.

On rebuttal, the defense psychiatrist agreed with the legal framework discussed by the Commonwealth's expert, differentiating between knowledge and appreciation, and testified to his opinion that Appellant both did not appreciate, and also did not *know*, what he did was wrong at the time of his actions. *See* N.T., March 30, 2005, at 140.

After the close of the evidence and closing arguments, the trial court opened its charge by explaining the presumption of innocence and the Commonwealth's burden of proof beyond a reasonable doubt. *See* N.T., March 31, 2005, at 37–38 ("[I]t is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the Defendant is guilty of that crime beyond a reasonable doubt."). The court proceeded to detail the elements of the substantive offenses charged, highlighting the Commonwealth's burden of proof beyond a reasonable doubt throughout. *See* N.T., March 31, 2005, at 41 ("In order to find the defendant guilty of attempted homicide, you must be satisfied that the following three elements have been proven *beyond a reasonable doubt* . . ." (emphasis added)); *id.* at 42 (same, for aggravated assault).

The trial court then indicated that, because Appellant had asserted an insanity defense, in addition to the ordinary general verdicts of guilty or not guilty, the jury was charged with evaluating the appropriateness of two other potential, special verdicts: "not guilty by reason of legal insanity" and "guilty but mentally ill." The court proceeded to explain:

The verdict of not guilty by reason of legal insanity labels a [d]efendant as sick rather than bad. It signifies that in the eyes of the law the person because of mental abnormality at

the time of the crime does not deserve to be blamed and treated as a criminal for what he did.

The verdict of guilty but mentally ill labels a [d]efendant as both bad and sick. It means that in the law's eyes that person at the time of the crime was not so mentally abnormal as to be relieved from blame and criminal punishment for what he did but that he was abnormal enough to make him a likely candidate for special therapeutic treatment. Legal insanity excuses any crime.... A [d]efendant has a complete defense to an otherwise criminal act if he was legally insane at the time he committed the act....

N.T., March 31, 2005, at 45–46; *accord* PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 5.01A(1), (2); *Commonwealth v. Trill*, 374 Pa.Super. 549, 583, 543 A.2d 1106, 1123 (1988) (utilizing the "sick" and "bad" rubric in explicating the guilty-but-mentally-ill verdict). The trial court then quoted and paraphrased the statutory definition of legal insanity. *See* N.T., March 31, 2005, at 46–47 ("Stated more simply, a person is legally insane if at the time of committing an alleged crime he is as the result of mental disease or defect either incapable of knowing what it is that he is doing or if he does know what he is doing, he's incapable of judging that it is wrong."). Further, consistent with Section 315 of the Crimes Code, the court indicated that a defendant bears the burden of proving an insanity defense by a preponderance, or the greater weight, of the evidence. *See id.* at 47. It summarized the above as follows:

Therefore, you can find the Defendant not guilty by reason of legal insanity only if you are satisfied beyond a reasonable doubt that he committed the otherwise criminal act charged and you are also satisfied by a preponderance of the evidence that at the time of the act; first, he had a mental disease or defect at the time of the act; second, that as a result of the disease or defect—and here's where the insanity defense has an either/or, two prongs—he was incapable of knowing the nature of what he was doing....

So first you must find beyond a reasonable doubt, which is the Commonwealth's burden, that he committed the crimes

charged under those elements I gave you for each of the crimes charged before. If you find that, then the burden shifts, and it's by a preponderance of the evidence that you find those different prongs of the insanity defense, that you look at those different prongs.

N.T., March 31, 2005, at 47–48; *accord* PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 5.01A(3).

Next, the trial court developed that a verdict of guilty but mentally ill becomes possible when a defendant offers, but fails to prove, a legal insanity defense. *See* N.T., March 31, 2005, at 49; *accord* 18 Pa.C.S. § 314. It instructed:

You may return this verdict if you are satisfied beyond a reasonable doubt that the Defendant committed the crime alleged and you are also satisfied by a preponderance of the evidence that ... the Defendant, although not legally insane, was mentally ill at the time of the crime.

*Id.* at 49–50; *accord* PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 5.01A(6). The court proceeded to quote Section 314 and explain:

Comparing the definitions of legal insanity and mental illness, we can see that they both require a mental disease or defect which is something more than faulty character, personality, temperament or social adjustment. Their definitions differ, however, with regard to the incapacitating effectness [sic] for legal insanity on the one hand or mental illness on the other.

Legal insanity requires that the [d]efendant be incapable either of knowing what he is doing, the physical act itself, or of judging its wrongfulness. Mental illness requires only that the Defendant lack substantial capacity either to appreciate the wrongfulness of what he is doing or to obey the law.

*Id.* at 50–51; *accord* PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 5.01A(8).

The trial court also admonished that the jurors should apply the law as instructed and should not concern themselves with what would happen to Appellant if found not guilty, in terms

of whether he would be set free or whether he would be confined to a mental hospital for treatment. Nevertheless, it stated:

I will tell you, however, that when a [d]efendant is found not guilty by reason of insanity, legal insanity, he is subject to an immediate court proceeding to decide whether he should be committed to a mental treatment facility. If committed, his commitment should continue until he is no longer dangerous to others or to himself.

I will also tell you that a [d]efendant who is found guilty but mentally ill may be given any sentence which may be lawfully imposed on any person convicted of the same crime. However, before imposing sentence, the court must hold a hearing and make findings concerning the [d]efendant's current mental condition and need for treatment.

The law provides that a [d]efendant who is severely mentally disabled and in need of treatment at the time of sentencing shall consistently with available resources be furnished such treatment as is psychiatrically or psychologically indicated for his mental illness. The Mental Health Procedures Act in Pennsylvania dictates where and how he will be treated; for example, whether that will be in a prison setting or in a mental treatment facility.

N.T., March 31, 2005, at 52–53; *accord* PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 5.01A(10), (11).

The trial court then summarized, as follows:

In order to find the Defendant not guilty by reason of legal insanity, you must be satisfied beyond a reasonable doubt that he committed the otherwise criminal act charged, and you must also be satisfied by a preponderance of the evidence; first, that at the time of the act the Defendant had a mental disease or defect; and, second, that as a result of that disease or defect the Defendant was either incapable of knowing what he was doing, or if he did know, he was incapable of knowing that it was wrong.

* * *

In order to find the Defendant guilty but mentally ill, you must be satisfied beyond a reasonable doubt that the Defendant is guilty of the crimes charged, and you must also be satisfied by a preponderance of the evidence that the Defendant, although not legally insane, had a mental disease or defect at the time of the crime and as a result of that disease or defect the Defendant lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

N.T., March 31, at 53–54; *accord* PENNSYLVANIA SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS § 5.01A(12).

Appellant's counsel lodged an objection to the instructions, indicating that, because of their preponderance-based approach to the verdict of guilty but mentally ill, they impermissibly permitted conviction based on a quantum of proof less than beyond a reasonable doubt. *See id.* at 68.

After due deliberation, the jury returned a verdict of guilty but mentally ill on the charges of attempted homicide and aggravated assault and guilty on the charge of possession of an instrument of crime. The trial court conducted a hearing pursuant to the Mental Health Procedures Act, 50 Pa.C.S. §§ 7101–7116, to determine Appellant's mental health status, *see* 42 Pa.C.S. § 9727(a), and sentenced Appellant to fourteen to twenty-eight years' imprisonment, with directions to the Department of Corrections to afford psychiatric and psychological evaluations, as well as any recommended treatment. Appellant filed timely post-sentence motions arguing, *inter alia,* that the statutes defining legal insanity and the verdict of guilty but mentally ill are unconstitutional and that the jury instructions impermissibly allowed the jury to convict based upon a standard below proof beyond a reasonable doubt, as well as raising sufficiency- and weight-of-the-evidence challenges.

In addressing Appellant's challenges, the trial court emphasized that, under its instructions, proof beyond a reasonable doubt of all elements of the substantive offenses was a prereq-

uisite to the jurors' consideration of the status of guilty but mentally ill.[4] The court then conducted a detailed review of the evidence presented by the Commonwealth at trial, including the victim's eyewitness testimony, and concluded that all elements of all substantive offenses involved were established beyond a reasonable doubt. *See id.* at 5–8. In terms of its articulation to the jurors of the insanity and guilty-but-mentally-ill verdicts, the trial court emphasized that its charge conformed to the standard jury instructions, as well as the pertinent decisional law. *See Rabold,* No. 389 Crim.2003, *slip op.* at 21–24 (citing *Sohmer,* 519 Pa. at 200, 546 A.2d at 601, *Commonwealth v. duPont,* 730 A.2d 970, 979–80 (Pa.Super.1999), and *Commonwealth v. Bowers,* 400 Pa.Super. 377, 583 A.2d 1165 (1990)).

Addressing Appellant's sufficiency-of-the-evidence claim, the court reasoned that the evidence in toto (expert and lay, including that of the victim, Appellant's brother, and responding police officers) supported the conclusion that Appellant lacked the substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, but that he nevertheless was not laboring under a defect of reason such that he was unable to know the nature and quality of his actions. *Rabold,* No. 389 Crim.2003, *slip op.* at 16; *accord Commonwealth v. Trill,* 374 Pa.Super. 549, 562, 543 A.2d 1106, 1112 (1988) (explaining that credibility determinations are within the province of the jury).

As to Appellant's weight-of-the-evidence claim, the trial court first described the relevant legal framework, encompassing a determination whether a verdict is so contrary to the

4. *See Commonwealth v. Rabold,* No. 389 Crim.2003, *slip op.* at 5 (C.P. Monroe Apr. 21, 2006) ("In order to sustain the jury's verdict under the [statutes governing criminal homicide, attempt, and aggravated assault], the Commonwealth must have proven to the jury beyond a reasonable doubt each and every element of the offenses and then, and only then, defense counsel must have proven by a preponderance of the evidence that Defendant was mentally ill during the commission of the offenses."); *id.* at 23–24 ("The jury could not consider Defendant's mental state at the time of the commission of the crime to determine if he was legally insane or mentally ill without *first* making the determination that he was guilty of the elements of the crimes beyond a reasonable doubt.").

evidence as to shock one's sense of justice.  *See id.* at 18 (citing *Commonwealth v. Foster,* 764 A.2d 1076, 1083 (Pa.Super.2000)).  The court noted that, although Appellant's expert witnesses opined that he was legally insane at the time of his crimes, the jury was free to believe the testimony of the Commonwealth's experts and did not ignore facts that were of greater weight.  Likewise, the court found that the verdict rendered in the case was not so contrary to the evidence so as to shock its sense of justice.  *See Rabold,* No. 389 Crim.2003, *slip op.* at 18–19.[5]

The Superior Court affirmed in a published, panel decision. *See Commonwealth v. Rabold,* 920 A.2d 857 (Pa.Super.2007). With regard to the challenges to the trial court's jury charge, the panel also relied on past precedent.  *See id.* at 861 (citing *duPont,* 730 A.2d at 979–80).  The Superior Court panel noted that it was being asked to revisit *duPont,* but reasoned that it was unable to do so, since *duPont* was a controlling, *en banc* decision of the court.  *See id.* at 861 (citing *Gorski v. Smith,* 812 A.2d 683, 702 n. 8 (Pa.Super.2002)).

Concerning Appellant's sufficiency claim, the panel characterized his argument as asserting that a finding of guilty but mentally ill negates the *mens rea* required for conviction of homicide and aggravated assault.  *See id.* at 859.  The Superior Court panel found this claim contrary to the logic of *Commonwealth v. Santiago,* 579 Pa. 46, 78, 855 A.2d 682, 701 (2004) (explaining that a guilty but mentally ill conviction "does not negate [the defendant's] intent to commit a criminal act").  Further, the Superior Court relied upon the following explanation from *Trill:*

> [T]he legislature has determined that persons classified as guilty but mentally ill either lack the capacity to appreciate

5.  The court also declined to disturb the guilty verdict relative to the offense of possession of an instrument of crime, although it perceived some inconsistency with the guilty-but-mentally-ill verdicts.  In this regard, it explained that inconsistent verdicts are valid, so long as the evidence is sufficient to support the convictions that the jury has returned.  *See Rabold,* No. 389 Crim.2003, *slip op.* at 17 (quoting *Trill,* 374 Pa.Super. at 560, 543 A.2d at 1110).  Appellant does not presently challenge the determination in this regard.

the wrongfulness of their conduct or are unable to conform their conduct to the requirements of the law. *However, the General Assembly determined that this classification of individuals is capable of possessing the requisite mens rea for the attachment of criminal responsibility.* In other words, those individuals who have been found guilty but mentally ill are both "sick" and "bad" (i.e., criminally responsible).

*Rabold,* 920 A.2d at 859 (quoting *Trill,* 374 Pa.Super. at 583, 543 A.2d at 1123) (emphasis in original). Accordingly, the panel found that Appellant's guilty-but-mentally-ill convictions do not extinguish the mens rea necessary to impose criminal liability. *See id.* In terms of sufficiency of the evidence, the Superior Court panel also adopted the trial court's analysis concerning the appropriate resolution of a conflict in the evidence by the fact-finder. *See id.* at 860, ("As the trial court notes, however, in its thoughtful and well-written opinion: '[W]hile psychiatric testimony is of probative value, it is within the province of the jury to determine the credibility and weight of such evidence[.]' ").

As to the weight-of-the-evidence claim, the panel referenced the limited appellate standard of review, *see Rabold,* 920 A.2d at 860 (citing *Commonwealth v. Champney,* 574 Pa. 435, 444, 832 A.2d 403, 408 (2003)), and rejected the claim summarily. *See Rabold,* 920 A.2d at 860 ("Rabold's weight of the evidence claim is predicated on the conflicting expert testimony. The trial court rejected this claim noting that the jury was free to choose to believe the Commonwealth's expert. We find no abuse of discretion." (citation omitted)).

Presently, Appellant develops that the Pennsylvania General Assembly, as well as a number of other legislative bodies in other states, authorized verdicts of guilty but mentally ill in response to public outrage surrounding John Hinckley's not-guilty-by-reason-of-insanity acquittal after his attempt to assassinate President Ronald Reagan. *Accord Trill,* 374 Pa.Super. at 573–79, 543 A.2d at 1118–20 (setting forth an extensive discussion of the legislative history of Section 314). Appellant argues that great confusion has arisen subsequently over the

meaning and intent of Sections 314 and 315 of the Crimes Code, particularly in terms of the manner in which mental illness is differentiated from insanity. In general terms, he contends that the statutes are so poorly written that they should simply be stricken by this Court. Further, according to Appellant, this Court misread Section 314 in *Sohmer* and inappropriately authorized the assignment of criminal liability absent an appropriate finding of culpability beyond a reasonable doubt.[6] Appellant also asserts that, crafted against this background, the trial court's jury charge is ambiguous, confusing, and discriminatory,[7] and that it permitted him to be convicted on proof short of beyond a reasonable doubt in derogation of his fair-trial interests under the Due Process Clause of the United States Constitution.[8] Appellant develops that the United States Supreme Court has held that the due process considerations under the Fourteenth Amendment require "clear and convincing" (or a similar) standard of proof assigned to the petitioner requesting commitment and not a preponderance in civil commitment proceedings. *See Addington v. Texas*, 441 U.S. 418, 431–34, 99 S.Ct. 1804, 1812–13, 60 L.Ed.2d 323 (1979); *accord* 50 Pa.C.S. § 7304(f). According to Appellant, a guilty-but-mentally-ill verdict should not be treated as merely a residual outcome of a failed insanity defense, but rather, it is incumbent upon any court where the

**6.** *See* Brief for Appellant at 13 ("Where as here, a sentence of imprisonment becomes the factual reality of a verdict of guilty but mentally ill, a level of proof beyond a reasonable doubt must be assigned to the factfinder, otherwise Pennsylvania becomes a state of penal incarceration on a standard of proof of less than reasonable doubt in violation of defendant's right to a fair trial under the Fourteenth Amendment Due [P]rocess Clause of the United States Constitution."); *see also id.* ("To allow Rabold, or any other defendant so situated, to be found guilty but mentally ill by a preponderance of the evidence is to incarcerate mentally ill individuals on an evidentiary standard less than that which is allowed in civil commitment hearings for those adjudged with mental illness.").

**7.** Although Appellant utilizes the term "discriminatory," he does not specifically set forth an equal protection challenge to Section 314. Rather, his constitutional challenge is framed in terms of the entitlement to a fair trial under due process norms.

**8.** Appellant does not invoke the corollary provision of the Pennsylvania Constitution. *See* PA. CONST. art. 1 § 9.

mental state of the actor is at issue to determine whether the actor had the requisite mens rea via "mental illness" or lack of "mental illness" to commit the offenses charged by the Commonwealth. Because a guilty-but-mentally-ill verdict subsumes a finding of mens rea, Appellant asserts that the requisite burden of proof must always remain with the Commonwealth. *See* Brief for Appellant at 20 (criticizing *Sohmer* and stating that "[a] holding that a verdict of guilty but mentally ill does not require a finding of culpability defies logic and all reasoning given the fact that the very statute is codified within the section of the Criminal Code entitled 'Culpablity' ").

Appellant posits that, where a defendant asserts an insanity defense, the essential inquiry must be as follows:

1. Whether the Defendant has proven by a preponderance of the evidence that he was insane at the time he committed the criminal offense.

2. If the defendant fails to prove by a preponderance of the evidence that he was legally insane at the time he committed the criminal offense, the jury must then decide whether the Commonwealth proved beyond a reasonable doubt that the defendant was sane at the time he committed the offense which in turn would result in a verdict of guilty, or the Commonwealth must prove beyond a reasonable doubt that the defendant was mentally ill at the time he committed the offense.

Brief for Appellant at 18. Finally, Appellant takes issue with the sick-and-bad rubric employed in the trial court's charge, contending that it inappropriately injected character matters into the jurors' calculus. He highlights his policy perspective of emphasizing compassionate care and treatment for mentally ill offenders versus the imposition of penal measures. *See* Brief for Appellant at 5 (quoting *Trill,* 374 Pa.Super. at 586, 543 A.2d at 1124 ("Mental disease [is] an illness that stands in the catalogue of human suffering with a sad preeminence of claim over all the others upon commiseration but which, in truth, has received the smallest share of our assistance."

(quoting Todd, Report of the Superintendent, Hartford Retreat for the Insane 17 (1824)))).[9]

Appellant's *amicus*, the Pennsylvania Association of Criminal Defense Lawyers, also contends that Pennsylvania's unique statutory scheme, and jury instructions utilized by our trial judges, affords no meaningful guidance between the alternatives of not guilty by reason of insanity and guilty but mentally ill. *Amicus* notes that the American Bar Association, the American Psychiatric Association, and the National Mental Health Association Commission on the Insanity Defense have all declared their opposition to statutes authorizing verdicts of guilty but mentally ill in general. *See, e.g.,* ABA Criminal Justice Mental Health Standards, 7–610, 393–94, Commentary (1988) (indicating that such a verdict "is not a proper verdict at all" and adds a conceptually unjustifiable element to the criminal justice system). *Amicus* develops that the legal standard embodied in Section 314 to determine the appropriateness of a verdict of guilty but mentally ill derives directly from a proposed legal standard for insanity advocated by the American Law Institute in its Model Penal Code, Model Penal Code § 4.01 (1985). *See* Brief for *Amicus* at 11 (asserting that "no other state employs such a scheme— relying on the American Law Institute's test of insanity, itself an *exculpatory* test, for its *inculpatory* [guilty-but-mentally-ill] verdict, and relying on the alternative but mutually inclu-

---

**9.** The sufficiency-of-the-evidence argument presented in Appellant's brief rests on the premise that the finding of mental illness under Section 314 versus insanity under Section 315 must be based on proof beyond a reasonable doubt. *See* Brief for Appellant at 30 ("[W]here as here two expert witnesses agree in psychiatric diagnosis and disagree on upon [sic] the ultimate issue of fact, there is at the very least, the reasonable likelihood that when comparing the two witnesses['] testimony, the evidentiary standard that must be used to impose criminal liability e.g., finding of mental illness under 18 Pa.C.S.A. § 315 must be proof beyond a reasonable doubt with the burden resting upon the Commonwealth."). His weight-of-the-evidence challenge rests on the proposition that the jury instruction "shocks the conscience," because it so confused the jurors that they would not properly weigh the evidence before them. *See id.* at 31–32. Since it is apparent that these arguments are integrally dependent upon the success of Appellant's challenges to the statutory framework and jury charge, they need not be addressed separately here.

sive M'Naughten (M'Naghten) test as its test for legal insanity"). Further, *amicus* suggests that the distinctions between the tests are subtle and confusing to laypersons. *See* Brief for Amicus at 11 ("In the hands of a lay jury, ... the difference between guilt and innocence hangs on the ephemeral distinction between what it means to be capable of 'appreciating' that one's act was wrong and 'knowing' it was wrong."); *id.* at 12–13 (quoting Pa. Legislative Journal, House 1640 (Sep. 21, 1982) (reflecting the comment of a legislator that "[Section 314] is an attempt to get around the existing law by deceiving the jury. It will create enormous problems for a jury.")).

*Amicus* quotes a common pleas judge and commentator as follows:

Both judges and juries face a Herculean task in distinguishing the differences between the legal definitions of insanity and mental illness ... Any criminal trial judge who has attempted to explain the legal definitions of insanity and mental illness can relate the quizzical looks given by juries when the legal definitions are read to them. Almost by magic, these quizzical looks disappear and the proverbial "light bulb comes on" when the judge explains the import of their verdict. Suddenly, jurors understand that they are being asked to decide whether the Defendant should go free or face incarceration once his mental health treatment ends. In the parlance of the Superior Court, juries decide whether a "sick" person is also "bad" enough to warrant the punishment of jail.

Brief for Amicus at 13 (quoting Bradford H. Charles, *Pennsylvania's Definitions of Insanity and Mental Illness: A Distinction With a Difference?*, 12 TEMP. POL. & CIV. RTS. L. REV. 265, 271–72 (2003)); *see also id.* at 265, 272 (expressing the sentiment that "[i]n Pennsylvania, the distinction between the definition of mental illness and insanity is merely semantic" and consequently juries "are left to make 'ends-oriented' decisions"). *Amicus* also contends that the "sick" versus "bad" terminology utilized by the trial court strips defendants of the presumption of innocence by inappropriately directing jurors to focus on the defendant's character rather than the

nature of the defendant's "sickness" and its relationship to his conduct. *See generally Old Chief v. United States,* 519 U.S. 172, 181, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) ("Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt." (citation omitted)); *United States v. Foskey,* 636 F.2d 517, 523 (D.C.Cir.1980) ("It is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not who he is.'" (citation omitted)). Additionally, *amicus* contends that the statutory framework compounds these asserted constitutional violations by shifting the burden of proof to the defendant to demonstrate that he is not "bad," contravening the basic tenet of criminal law that there is a continuing presumption of innocence. *See Commonwealth v. Hilbert,* 476 Pa. 288, 297, 382 A.2d 724, 729 (Pa.1978) (explaining that "a state carries a never-shifting burden of proof beyond reasonable doubt of all the elements of crime").

The Commonwealth for its part, references the strong presumption of constitutionality attending legislative enactments and the burden upon any challenger to demonstrate that the statute is "clearly, palpably and plainly unconstitutional." *Commonwealth v. Burnsworth,* 543 Pa. 18, 24, 669 A.2d 883, 886 (1995). The Commonwealth develops that the Superior Court in *Trill* specifically rejected the argument that Section 314 is unconstitutional on either due process or equal protection grounds. *See Trill,* 374 Pa.Super. at 570–98, 543 A.2d at 1116–30; *see also Commonwealth v. Zewe,* 444 Pa.Super. 17, 26–28, 663 A.2d 195, 200–01 (1995); *Commonwealth v. Eck,* 439 Pa.Super. 530, 538, 654 A.2d 1104, 1107 (1995) (commenting that the constitutionality of Section 314 has repeatedly been upheld). In terms of the jury charge, the Commonwealth highlights the trial court's use of the relevant charge from Pennsylvania Suggested Standard Jury Instructions pertaining to criminal law, which has been specifically approved by the intermediate appellate courts. *See duPont,* 730 A.2d at 980. Further, it emphasizes that, per the trial court's instructions, Appellant's guilt of the substantive offenses, on proof by

the Commonwealth beyond a reasonable doubt, was determined by the jurors as a threshold matter prior to their consideration of Appellant's sanity and mental illness. In this regard, the Commonwealth stresses that the trial court repeatedly told the jurors that they must first decide if Appellant was guilty of the crimes charged beyond a reasonable doubt before they ever could consider the special verdicts of not guilty by reason of insanity or guilty but mentally ill. The Commonwealth notes that this Court addressed the issue of the burden of proof required by Sections 314 and 315 of the Crimes Code in *Sohmer*, where it was recognized that a defendant's sanity is presumed, *see Sohmer*, 519 Pa. at 208 n. 3, 546 A.2d at 605 n. 3; that the burden of establishing insanity, by a preponderance of the evidence, is on the defendant, *see id.;* and, further, that neither the defendant nor the Commonwealth has the burden of establishing mental illness, because that was a factual determination to be made from the evidence as a whole. *See id.* at 212, 546 A.2d at 607. The Commonwealth contends that the Legislature has made a policy judgment that a finding of guilt with mental illness does not negate the intent element of crimes, nor should it act as a mitigating factor at sentencing. *See Commonwealth v. Morris,* 385 Pa.Super. 563, 561 A.2d 1236 (1989); 42 Pa.C.S. § 9727.

Appellant's challenges to the statutory scheme governing verdicts of not guilty by reason of insanity and guilty but mentally ill present matters of law, over which our review is plenary.

At the outset, we agree with Appellant and *amicus* that the matter of deciding who, among the mentally ill, should bear criminal culpability for their acts, and who should not, is a difficult task, as is the fashioning of a workable definition for legal insanity as a condition relieving one who has committed a crime from criminal responsibility. *See generally Clark v. Arizona,* 548 U.S. 735, 755 n. 24, 126 S.Ct. 2709, 2723 n. 24, 165 L.Ed.2d 842 (2006) (explaining that "[i]nsanity standards are formulated to guide the factfinder to determine the blameworthiness of a mentally ill defendant"). Nevertheless, as a

matter of federal constitutional law, the inquiry has been largely left to policy decision-making by the States. In this regard, the United States Supreme Court has explained:

> [I]t is clear that no particular formulation has evolved into a baseline for due process, and that the insanity rule, like the conceptualization of criminal offenses, is substantially open to state choice. Indeed, the legitimacy of such choice is the more obvious when one considers the interplay of legal concepts of mental illness or deficiency required for an insanity defense, with the medical concepts of mental abnormality that influence the expert opinion testimony by psychologists and psychiatrists commonly introduced to support or contest insanity claims. For medical definitions devised to justify treatment, like legal ones devised to excuse from conventional criminal responsibility, are subject to flux and disagreement. See infra at 2732–2733; cf. *Leland*, 343 U.S. at 800–801, 72 S.Ct. 1002, 96 L.Ed. 1302 (no due process violation for adopting the M'Naghten standard rather than the irresistible-impulse test because scientific knowledge does not require otherwise and choice of test is a matter of policy). There being such fodder for reasonable debate about what the cognate legal and medical tests should be, due process imposes no single canonical formulation of legal insanity.

*Id.* at 752–53, 126 S.Ct. at 2722.

This is the constitutional framework in which we resolve this case, and we do so with the recognition that the political branch, and not the courts, serves primarily to determine public policy in Pennsylvania. *See Commonwealth ex rel. Pa. Attorney General v. Griffin,* 596 Pa. 549, 560–61, 946 A.2d 668, 675 (2008). Further, the *M'Naghten* test for insanity, adopted by the Pennsylvania Legislature, has applied on a long-standing basis in Pennsylvania, *see Commonwealth v. Reilly,* 519 Pa. 550, 558–59, 549 A.2d 503, 507 (1988); this "right-and-wrong" test has been deemed consistent with due process, *see Clark,* 548 U.S. at 753, 126 S.Ct. at 2722; it has long been accepted that criminal defendants may be presumed sane for purposes of determining their criminal liability, *see*

*id.* at 766, 126 S.Ct. at 2729–30 ("The presumption of sanity is equally universal in some variety or other, being (at least) a presumption that a defendant has the capacity to form the *mens rea* necessary for a verdict of guilt and the consequent criminal responsibility."); 21 AM.JUR.2D CRIM. LAW § 66 (2008); and the placement of the burden with the defendant to prove insanity by a preponderance of the evidence does not offend constitutional norms. *See id.* at 769, 126 S.Ct. at 2731 ("[A] jurisdiction may place the burden of persuasion on a defendant to prove insanity as the applicable law defines it, whether by a preponderance of the evidence or to some more convincing degree[.]" (citing *Leland v. Oregon,* 343 U.S. 790, 798, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302 (1952))); *see also id.* at 771, 126 S.Ct. at 2732; *Reilly,* 519 Pa. at 569, 549 A.2d at 512. To the extent that Appellant's arguments are in tension with these long-established principles, they may be rejected outright.[10]

A substantial portion of the difficulties touched upon in Appellant's and *amicus's* briefs proceed from the conceptual overlap, and distinction, between rebutting the Commonwealth's evidence concerning criminal intent as an element of the offense, and contesting the defendant's moral culpability via an insanity defense. In this regard, on the one hand, the United States Supreme Court has rejected the notion that *mens rea* and insanity, as currently understood, are entirely distinct, so that mental-disease and capacity evidence relevant to insanity is simply irrelevant to *mens rea. Clark,* 548 U.S. at 768 n. 38, 126 S.Ct. at 2730 n. 38 (citing, *inter alia, Powell v. Texas,* 392 U.S. 514, 535–36, 88 S.Ct. 2145, 2155–56, 20 L.Ed.2d 1254 (1968) (characterizing that the "doctrines of

10. For example, Appellant's perspective on the required inquiry is that, where there is a failed insanity defense, the Commonwealth must prove beyond a reasonable doubt that the defendant is sane in order to maintain a verdict of guilt. *See* Brief for Appellant at 18. Appellant references no authority for this proposition, which is contrary to Pennsylvania's statutory scheme and would undermine the presumption of sanity. *See Sohmer,* 519 Pa. at 208 & n. 3, 546 A.2d at 605 & n. 3; *accord Clark,* 548 U.S. at 772, 126 S.Ct. at 2732–33 (rejecting the notion that States are constitutionally required to treat the presumption of sanity as a "bursting bubble," upon the proffer of any evidence of mental health deficiency).

*actus reus, mens rea,* insanity, mistake, justification, and duress" as a "collection of interlocking and overlapping concepts which the common law has utilized to assess the moral accountability of an individual for his antisocial deeds")). On the other hand, however, the High Court has determined that due process norms permit States to channel and restrict mental-disease and capacity evidence such that it may be given full effect only if a defendant convinces the factfinder of his insanity. *See Clark,* 548 U.S. at 771, 126 S.Ct. at 2732.[11]

Although the matter of distinguishing the intent element of crimes from the insanity defense and guilty-but-mentally-ill verdict may entail some subtlety, this appeal is more straightforward than the present briefs portray, because Appellant's trial objection was very limited. In the first instance, Appellant did not oppose the overall conceptual framework by which the jury was required to determine whether the Commonwealth met its burden of proof with respect to each element of the offenses; was then to proceed to determine whether Appellant met his burden of proof connected with the insanity defense; and if not, was to consider the appropriateness of a verdict of guilty but mentally ill. Indeed, Appellant proposed that very framework in his requested points for charge, derived from standard jury instructions. *See* Motion for Binding Instructions and Defendant's Points for Charge ¶ 15. At trial, Appellant also did not assert

---

**11.** Parenthetically, this Court reached a different conclusion under Article I, Section 9 of the Pennsylvania Constitution in *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976), which mandated the availability of a limited diminished capacity defense for certain crimes. *See id.* at 223, 360 A.2d at 920–21. The difference in the outcome, as between *Walzack* and *Clark,* appears to rest in large part on the Courts' differing perspectives concerning psychiatric evidence. *Compare Walzack,* 468 Pa. at 222–23, 360 A.2d at 920 (quoting *State v. Gramenz,* 256 Iowa 134, 126 N.W.2d 285 (Iowa 1964), for the proposition that "great advancements ... have been made in the field of psychiatry[;][t]he results which have been achieved confirm its growing reliability"), *with Clark,* 548 U.S. at 778, 126 S.Ct. at 2736 (reasoning that "empirical and conceptual problems add up to a real risk that an expert's judgment in giving capacity evidence will come with an apparent authority that psychologists and psychiatrists do not claim to have"). Again, however, Appellant has not invoked the Pennsylvania Constitution, and he does not reference *Walzack* or its progeny.

that the permissibility of the verdict was the result of some improper legislative purpose or criticize the definitions of insanity and mental illness as confusing and unworkable as he and his *amicus* do now; rather, Appellant proposed those very definitions. *See id.*[12] Finally, Appellant did not oppose the sick-and-bad rubric embodied in the trial court's jury instructions (and as also suggested in the standard jury charge); instead, and again, he proposed those instructions verbatim. *see id.* ¶ 14.[13]

The sole contest initiated by Appellant at trial to the jury charge was limited to his assertion that the burden in connection with a guilty-but-mentally-ill verdict must be assigned to the Commonwealth on proof beyond a reasonable doubt. *See* N.T., March 31, 2005, at 67–68. For this reason, we will not consider the broadscale challenge which Appellant and his *amicus* presently seek to advance. *See Commonwealth v.*

**12.** The distinction between "knowledge" and "appreciation" of wrongfulness forming a basis of the distinction between the common-law and Model Penal Code standards for insanity, which was referenced at Appellant's trial by the Commonwealth's expert, has been discussed in various judicial decisions. *See, e.g., United States v. Meader*, 914 F.Supp. 656, 658 n. 2 (D.Me.1996). In this case, consistent with the governing statutory scheme, and as noted, Appellant himself proposed the narrower formulation centered on his "knowledge" in his proposed points for charge. Appellant also did not object to this formulation after the trial court issued its instructions. Further, he did not challenge the explanation of these concepts given by the Commonwealth's expert; rather, he sought to conform the testimony of his own expert to that explanation on rebuttal. *See* N.T., March 30, 2005, at 14. Accordingly, there is no basis at the present time to support a challenge to the focus of the trial court's charge upon the "knowledge" concept.

**13.** While, because the matter is unpreserved, the present appeal does not call for us to approve or disapprove the sick-and-bad terminology, we observe that it was used in this case, as it was in *Trill*, as an illustration of more conceptual descriptions of the not-guilty-by-reason-of-insanity and guilty-but-mentally-ill verdicts. Moreover, as directed by the trial court, the jurors were to assess whether the Commonwealth met its burden to prove beyond a reasonable doubt that Appellant committed the substantive offenses before the jurors ever were to consider the sick-and-bad distinction. In such circumstances, the danger that the jurors would take the references, not as they were intended, but as an invitation to determine Appellant's guilt or innocence by reference to his general character is far more remote than the arguments suggest.

*Robinson,* 543 Pa. 190, 198, 670 A.2d 616, 620 (1995) (discussing the waiver doctrine as it pertains to issues not raised at trial). Rather, for purposes of this appeal, we implement the presumption of constitutionality and accept that Section 314 was a product of legitimate legislative purposes. *Accord Trill,* 374 Pa.Super. at 585, 543 A.2d at 1124 (explaining that Section 314 "was merely the statutory articulation of our legislature's desire to allow the finder of fact to hold responsible those mentally ill defendants who deviate from the laws of this Commonwealth, while at the same time providing them with the humane psychiatric treatment for their mental infirmities[;]" and, "[c]oncomitantly they hoped to limit the number of persons who, in the eyes of the legislature, were improperly being relieved of all criminal responsibility through utilization of the insanity verdict").[14] Therefore, the present state of the law in Pennsylvania concerning such challenges will remain as reflected in the late Honorable Vincent A. Cirillo's scholarly

**14.** A federal court also made this point in the following terms:

The state has a legitimate interest in having juries decide cases according to the law. The legislature could well have believed that many defendants were being found not guilty by reason of insanity even though they did not satisfy the legal standard for the defense. The difficulty is that lay juries are presented with complicated and to some extent conflicting notions of what renders a person "insane" in legal, psychiatric, and common sense terms. The [guilty-but-mentally-ill] statutes are designed to insure that the jury applies the *legal* definition of insanity, by underscoring that a person might be "mentally ill" in clinical terms, "crazy" in common sense terms, yet not legally insane.

We believe it is beyond question that the state could instruct a jury that it cannot acquit on the basis of insanity unless the legal test for insanity has been met. We see no additional objection which can be raised because the state chooses to formalize these instructions by providing a separate verdict form.

*United States ex rel. Weismiller v. Lane,* 815 F.2d 1106, 1112 (7th Cir.1987); *accord People v. Lantz,* 186 Ill.2d 243, 238 Ill.Dec. 592, 712 N.E.2d 314, 321 (1999) (explaining that the availability of the separate verdict of guilty but mentally ill "helps clarify for the jury the differences between insanity and mental illness that falls short of insanity"); *State v. Hornsby,* 326 S.C. 121, 484 S.E.2d 869, 872 (1997) (indicating that a guilty-but-mentally-ill statute "simply recognizes the continuum in the law regarding mental illness and provides a guide for a jury when considering whether a defendant is not guilty; not guilty by reason of insanity . . .; guilty but mentally ill . . .; or guilty").

opinion in *Trill*, 374 Pa.Super. at 570–98, 543 A.2d at 1126–30. *Accord duPont*, 730 A.2d at 979–80.[15]

On the limited issue that is preserved, we agree with the reasoning of the trial court and the Superior Court that the "preponderant evidence" approach taken in *Sohmer* does not remove the burden from the Commonwealth of establishing each element of a substantive criminal offense beyond a reasonable doubt. As those courts developed, the trial court's charge repeatedly and consistently placed that pivotal burden with the Commonwealth, and its satisfaction was a prerequisite to the jury's consideration of the insanity defense and the guilty-but-mentally-ill alternative. In the terms of the Illinois Supreme Court:

> jurors' consideration of these issues [of commission of the offense, insanity, and mental illness] is carefully channeled. Under the [guilty-but-mentally-ill] statutory scheme, the jury does not consider mental illness until it has first decided the defendant's claim of insanity. Thus, the jury does not determine insanity and mental illness simultaneously. The jury must consider first whether the defendant committed the acts forming the basis for the charged offense, next whether the defendant was insane, and finally whether the defendant was mentally ill. We believe that the sequence in which these issues are resolved by the jury further demonstrates that the defense in a [guilty-but-mentally-ill] case does not have the burden of establishing conflicting propositions at the same time.

**15.** Parenthetically, to our review, with the exception of one intermediate appellate court decision which was reversed on appeal, the verdict has been universally upheld. *See generally Trill*, 374 Pa.Super. at 572–74, 543 A.2d at 1117–18 (collecting cases); CHARLES E. TORCIA, 2 WHARTON'S CRIMINAL LAW § 105 (15th ed. 2007) ("The validity of 'guilty but mentally ill' statutes has been consistently upheld"); Annotation, *"Guilty but mentally ill" statutes, validity and construction*, 71 A.L.R.4th 702 (1989) ("To date no case has been found in which an appellate court has held a guilty but mentally ill statute to be unconstitutional."). Moreover, in *Sohmer*, this Court rejected the claim that Section 314 unduly encourages compromise verdicts. *See Sohmer*, 519 Pa. at 211–12 n. 6, 546 A.2d at 607 n. 6.

*Lantz,* 238 Ill.Dec. 592, 712 N.E.2d at 320–21.[16]

Appellant references no federal constitutional authority to support the proposition that the Legislature was required to assign the burden of proof under Section 314 to the Commonwealth, or that it must be satisfied beyond a reasonable doubt. Moreover, Appellant's references to civil commitment schemes are inapposite, because the referenced schemes subsume the confinement of persons who have never been found to have engaged in conduct meeting the substantive elements of a criminal offense. *See, e.g.,* 50 P.S. § 7304(f).

■ We understand that the guilty-but-mentally-ill instructions inject into juror deliberations a matter which is not determinative of the defendant's criminal responsibility or culpability, but rather goes to an aspect of his post-verdict disposition. *Accord Sohmer,* 519 Pa. at 211, 546 A.2d at 607 (explaining that "the only effect of a verdict of guilty but mentally ill is to trigger an inquiry at the time of sentencing to determine the defendant's mental status at the time of the sentence phase"). The premise that the involvement, short of insanity, of defendant's mental illness in his offenses may be decided in conjunction with the guilt-or-innocence determination is widely accepted and, in any event, is not appropriately questioned here. In response to the issue that was raised at trial, we hold that the burden need not be assigned to the Commonwealth to prove a defendant's mental illness beyond a reasonable doubt to support a guilty-but-mentally-ill verdict. Furthermore, to the degree that Appellant asks us to revisit the matter of statutory construction decided in *Sohmer,* we decline to do so, particularly since the Legislature has been free in the two decades that followed to alter the terms of the statute were there a different intention on its part.

**16.** To the degree that there is a concern that a jury may be influenced to render a guilty-but-mentally-ill verdict believing that it carries a more lenient sentence, those concerns were mitigated in this case by the trial court's use of the standard jury instruction describing a defendant's disposition upon verdicts of not guilty by reason of insanity or guilty but mentally ill.

Finally, we agree with Appellant and *amicus* that there remain real and serious issues concerning the treatment of mentally ill offenders within the criminal justice system. Nevertheless, when viewed both in terms of the limited role ascribed to the courts in such affairs and the narrow scope of the matter properly presented in this appeal, it is clear that this is not the appropriate vehicle to support a broad-based reexamination of the Pennsylvania scheme for determining criminal culpability, insanity, and mental illness.

The order of the Superior Court is affirmed.

Chief Justice CASTILLE, Justice EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.