J-S63022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELWOOD C. BRASWELL | : | |
| | : | |
| Appellant | : | No. 324 WDA 2018 |

Appeal from the Judgment of Sentence September 13, 2013
In the Court of Common Pleas of Forest County Criminal Division at
No(s):  CP-27-CR-0000037-2013

BEFORE:   OTT, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 29, 2018**

Elwood C. Braswell (Appellant) appeals from the judgment of sentence

imposed after a jury convicted him of criminal homicide and related offenses.

We affirm.[1]

_____

[1] As we discuss **infra**, this is Appellant's second direct appeal.  In his first counseled appeal, this Court held that the sole issue was waived for failure to preserve it, and subsequently Appellant's post-sentence and direct appeal rights were reinstated *nunc pro tunc.*  **See Commonwealth v. Rosado**, 150 A.3d 425, 434 (Pa. 2016) (holding that "the filing of an appellate brief which abandons all preserved issues in favor of unpreserved ones constitutes ineffective assistance of counsel *per se"*); **Commonwealth v. Braswell**, 86 WDA 2017 (unpublished memorandum) (Aug. 8, 2017).

Further, we note that in this appeal, Appellant purported to appeal from the February 6, 2018 order denying his post-sentence motion.  "However, '[i]n a criminal action, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions.'  Therefore, we have corrected the caption accordingly."  **Commonwealth v. Beeman**, 847 A.2d 87 n.1 (Pa. Super. 2004) (citation omitted).

*Former Justice specially assigned to the Superior Court.

Sometime in the early morning hours of August 22, 2012, Appellant, who was an inmate at SCI Forest, killed his cellmate, Frederick Kirkland (the victim). Appellant admitted to the killing. As a result, the Commonwealth charged Appellant with criminal homicide, aggravated assault, aggravated harassment by a prisoner, and abuse of a corpse.[2]

The case proceeded to a jury trial on August 26, 2013. The Commonwealth presented evidence that at 5:25 a.m. on August 22, 2012, Corrections Officer (CO) Curt Klawuhn and Nurse Eileen Summers went to Appellant and the victim's cell to administer medication to the victim. N.T. Trial, 8/26/13, at 53, 67-68. The victim was lying on the bottom bunkbed, covered with a sheet. *Id.* at 54-55, 68-70. In an "upbeat" manner, Appellant told the CO and Nurse Summers that the victim could not take his medication because Appellant killed him. *Id.* at 54, 68. Appellant further stated that Appellant "was god" and "wanted his power," and thus killed the victim, and now possessed the victim's powers. *Id.* at 54, 69. Appellant's tone was "conversational" and he appeared "happy" and was "laughing." *Id.* at 56, 70.

Later that morning, Pennsylvania State Police Trooper Jason Wagner and Corporal Charles Dominic conducted a videotaped interview of Appellant. N.T. Trial, 8/26/13, at 219. When Appellant was informed that the victim died, he "got to his feet[,] jumped in the air and [said] I did it." *Id.* at 221.

_____

[2] 18 Pa.C.S.A. §§ 2502(a), 2702(a)(1), 2703.1, 5510.

Appellant told the officers that he woke at 1:40 a.m. and "decided he was going to kill his cell mate." *Id.* at 222-223. Appellant then woke the victim and told him that the nurse was there with his medication, and the victim got up. *Id.* at 224. "[C]oncerned that someone in the neighboring cell may hear some noise," Appellant flushed the toilet and then punched the victim in the head. *Id.* at 224-225. The victim asked Appellant why he punched him, and Appellant punched him four more times. When the victim fell, Appellant "stomp[ed on] him." *Id.* at 226-227. Appellant placed a pillow over the victim's face and sat on the pillow for approximately 20 minutes until the victim stopped breathing and moving. *Id.* at 228-230. Appellant then punched the victim's face "multiple" times, before putting a sheet around the victim's neck and attempting to strangle him. *Id.* at 230.

Appellant further told the officers that he "moved [the victim's] body around a couple times" and ultimately placed the victim in the bottom bunk. N.T. Trial, 8/26/13, at 233. Appellant urinated and defecated on the victim, and used a sock filled with bars of soap to strike the victim's head five times. *Id.* at 234. Appellant also removed the victim's "drawers and diaper," put a chicken bone and a pen in the victim's anus, and attempted to bite off the victim's penis. *Id.* at 236, 245. Appellant covered the victim with a blanket because he knew that prison "staff members would be making the rounds." *Id.* at 235, 237. Finally, Appellant "attempted to clean up the corner of the cell." *Id.* at 235.

As to why Appellant attacked the victim, Appellant told the officers that "he was tired of carrying his cellie's weight" and that he "believed he was god and he wanted [the victim's] powers." N.T. Trial, 8/26/13, at 238. Appellant "indicated that he was happy that he did it." *Id.* at 239. He did not seem confused or disoriented, and although "[a]t times he spoke very rapidly," his explanation of the details was "very clear." *Id.* at 240. Following an autopsy, a forensic pathologist determined that the victim died of asphyxiation, with "blunt force trauma to the head also play[ing] a role." *Id.* at 187.

Appellant presented an insanity defense. He did not testify, but presented an expert witness, Dr. Safdar Chaudhary, a psychiatrist. Dr. Chaudhary interviewed Appellant approximately six months after the incident, and reviewed his criminal record, the videotape of his statement to Trooper Wagner and Corporal Dominic, and the police report. N.T. Trial, 8/26/13, at 268, 277, 338. Dr. Chaudhary also obtained Appellant's medical records several days before trial, but stated that the records did not factor into his report. *Id.* at 269, 332. Appellant initially told Dr. Chaudhary that he did not hear voices, but later stated that he heard "voices all the time." *Id.* at 311. Dr. Chaudhary diagnosed Appellant with schizophrenia/paranoid type, which the doctor characterized as having "delusions of persecution or grandeur," or a "feeling that a person has some kind of supernatural power." *Id.* at 271, 273-274. Dr. Chaudhary opined that at the time of the offense, Appellant was legally insane, "was suffering from an acute psychotic behavior," and was

unable "to tell the difference between right and wrong" due to his mental illness. *Id.* at 309, 330, 355. Dr. Chaudhary further opined that Appellant did not have a rational mind or a rational motive when he killed the victim. *Id.* at 330.

On cross-examination, Dr. Chaudhary acknowledged that by flushing the toilet so that others could not hear him, and cleaning up the cell and covering the victim with a blanket, Appellant "planned" and knew he needed to hide or cover up what he was doing. N.T. Trial, 8/26/13, at 335-336. Dr. Chaudhary also testified that if someone were attempting to "fake . . . a disease [or] disorder," he would ask that person many questions about his symptoms. *Id.* at 340-341. Dr. Chaudhary then acknowledged that when he asked Appellant about hearing voices, Appellant "said that he didn't know" and that Appellant "wasn't quite committed to even responding to that question." *Id.* at 341.

The jury returned a verdict of guilty but mentally ill on the counts of criminal homicide, aggravated assault, and abuse of a corpse, but found Appellant not guilty of aggravated harassment by a prisoner. On September 13, 2013, the trial court sentenced Appellant to life imprisonment without parole for homicide, a consecutive 10 to 20 years of imprisonment for aggravated assault, and a consecutive 1 to 2 years of imprisonment for abuse of a corpse.

Appellant did not file a post-sentence motion or direct appeal. On April

30, 2014, he filed a timely petition under the Post Conviction Relief Act (PCRA).[3] Raymond Rockwell, Esquire, was appointed to represent Appellant. Attorney Rockwell filed an amended PCRA petition seeking reinstatement of Appellant's direct appeal rights *nunc pro tunc*. The PCRA court[4] granted relief, and Appellant appealed, raising a single claim: whether the jury's verdict of guilty but mentally ill was against the weight of the evidence. Noting that Appellant had not sought, and was not granted, reinstatement of his post-sentence rights *nunc pro tunc*, this Court concluded that Appellant's weight claim was waived for failure to raise it before the trial court. Thus, on August 8, 2017, this Court affirmed the judgment of sentence. ***Braswell***, ***supra***.

On September 1, 2017, Appellant filed a timely "first" *pro se* PCRA petition, averring that Attorney Rockwell provided ineffective assistance of counsel. ***See Commonwealth v. Karanicolas***, 836 A.2d 940, 944 (Pa. Super. 2003) ("When a petitioner is granted a direct appeal *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition is considered a first PCRA petition for timeliness purposes."). The PCRA court appointed present counsel, Pamela Logsdon Sibley, Esquire, to represent Appellant, and she filed a motion to reinstate Appellant's post-sentence and appellate rights *nunc pro tunc*. The PCRA court granted relief.

---

[3] 42 Pa.C.S.A. §§ 9541-9545.

[4] The PCRA judge also presided at Appellant's trial.

- 6 -

On October 27, 2017, Appellant filed a motion for a new trial, again challenging the weight of the evidence. After hearing argument on January 30, 2018, the court on February 6, 2018, issued an order and opinion denying the motion. Appellant timely appealed. Appellant complied with Pa.R.A.P. 1925(b), and the trial court issued an additional opinion on April 30, 2018.

Appellant raises two related issues:

Whether the verdict of guilty but mentally ill is against the weight of the evidence when a qualified psychiatric expert testified that [Appellant] is legally insane, the Commonwealth does not rebut said expert testimony, and numerous Commonwealth witnesses testify to behavior demonstrating [Appellant's] insanity.

Whether the judge abuses her discretion by failing to order a new trial when [Appellant] has been found guilty but mentally ill after proving by a preponderance of the evidence that he was insane at the time the offense was committed.

Appellant's Brief at 6.

Appellant first alleges that he proved by a preponderance of the evidence — "'the lowest of standards' of proof" — that he was insane at the time of the incident, and thus the jury's verdicts of guilty but mentally ill are against the weight of the evidence. *Id.* at 14. Appellant avers that the jury "completely disregard[ed] the overwhelming evidence of insanity," including Dr. Chaudhary's unequivocal testimony that Appellant suffered from schizophrenia/paranoid type, exhibited "an extremely bizarre delusional system," and "there was no indication that [Appellant] was malingering or falsely portraying himself as insane." *Id.* at 14-15. Appellant also cites trial testimony that after the incident, he stated he was god and wanted the

- 7 -

victim's powers, he did not demonstrate any feelings of guilt, but instead "he acted as if he did not know that what he had done was wrong." ***Id.*** at 17-22. Appellant concludes the trial court abused its discretion in denying his motion for a new trial.

We note our standard of review:

> [T]he weight of the evidence is "exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." An appellate court "cannot substitute its judgment for that of the finder of fact . . . thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." Moreover, "where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence . . . rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim."

***Commonwealth v. Kim***, 888 A.2d 847, 851 (Pa. Super. 2005) (citations omitted). "Furthermore, when expert opinion evidence is admitted, the factfinder is free to reject it, accept it, or give it some weight between the two." ***Commonwealth v. Stephens***, 74 A.3d 1034, 1041 (Pa. Super. 2013) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (citation

omitted).

Our Supreme Court has explained:

> [A] verdict of guilty but mentally ill is authorized by Section 314 of the Crimes Code, as follows:

> > **(a) General rule.—**A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

> > \*    \*    \*

> > **(c) Definitions.—**For the purposes of this section . . . :

> > > (1) "Mentally ill."  One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

> > > (2) "Legal insanity."  At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

> 18 Pa.C.S. § 314.  [T]his Court determined that Section 314(a) does not impose a burden of proof concerning a defendant's mental illness on either party, but rather, is implicated where an insanity defense fails but evidence of the defendant's mental illness nevertheless "preponderates."  The insanity defense is provided for in Section 315 of the Crimes Code, as follows:

> > **(a) General Rule.—**The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of the evidence that the actor was legally insane at the time of the commission of the offense. . . .

- 9 -

18 Pa.C.S. § 315.

***Commonwealth v. Rabold***, 951 A.2d 329, 330-331 (Pa. 2008) (some citations omitted).

Instantly, the trial court noted that at argument on Appellant's post-trial motion, he requested that the court "review specific testimony." Trial Court Opinion, 2/6/18, at 3. The court thus considered the testimony of prison officials and Nurse Summers that "after the victim was discovered," Appellant "was gleeful, upbeat and pleasant," and "told them he killed the victim to get his power and now he was god." *Id.* The court further acknowledged Dr. Chaudhary's expert testimony that Appellant "met the definition of legal insanity at the time of the crime." *Id.* However, the court also referenced Dr. Chaudhary's testimony that Appellant "indicated that he planned to kill the victim"; "flushed the toilet to cover the noise when he began the assault"; and covered the victim's body "to conceal his actions." *Id.* at 3-4. The court aptly pointed out that "[t]he same evidence which is relevant to [Appellant's] proffered defense of insanity was relevant to the jury's finding of mental illness." Trial Court Opinion, 4/30/18, at 4. The court also recognized that the jury was free to believe all, part, or none of the evidence, and to determine the witnesses' credibility. *See Stephens*, 74 A.3d at 1041; *Kim*, 888 A.2d at 851. Ultimately, the trial court concluded that the jury's verdicts were "in no way . . . contrary to the evidence" and did not shock its sense of justice. Trial Court Opinion, 4/30/18, at 4; Trial Court Opinion, 2/6/18, at 4.

Upon review, we conclude that the trial court did not abuse its discretion. Although Dr. Chaudhary offered his opinion that Appellant met the legal definition of "insane" at the time of the killing, the jury was free to "reject it, accept it, or give it some weight between the two," and this Court may not reweigh the trial evidence or credibility of the witnesses. **See Stephens**, 74 A.3d at 1041; **Kim**, 888 A.2d at 851. Where both the Commonwealth's witnesses and Dr. Chaudhary testified that some of Appellant's actions indicated that he planned the assault and knew he should "cover [it] up", the jury was free to reject Appellant's insanity defense and find that "evidence of [Appellant's] mental illness nevertheless 'preponderate[d].'" **See Rabold**, 951 A.2d at 331, **citing** 18 Pa.C.S.A. § 314(c)(1). It is well-settled law that this Court may not reweigh evidence. **See Widmer**, 744 A.2d at 753; **Kim**, 888 A.2d at 851. Accordingly, we find no merit to Appellant's weight claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2018