J-S39019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FREDERICK B. POLES | : | |
| | : | |
| Appellant | : | No. 2985 EDA 2017 |

Appeal from the Judgment of Sentence April 21, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003547-2015,
CP-51-CR-0010605-2015

BEFORE:   LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 29, 2020**

Appellant, Frederick B. Poles, appeals from the judgment of sentence entered on April 21, 2017, as made final by the denial of his post-sentence motion on August 30, 2017, following his bench trial convictions for two counts of burglary,[1] simple assault,[2] and recklessly endangering another person ("REAP"),[3] as well as one count of aggravated assault with a deadly weapon[4]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3502(a)(1).

[2] 18 Pa.C.S.A. § 2701(a).

[3] 18 Pa.C.S.A. § 2705.

[4] 18 Pa.C.S.A. § 2702(a)(4).

and possession of an instrument of a crime ("PIC").[5]  Upon review, we vacate

Appellant's conviction and sentence for aggravated assault with a deadly

weapon, affirm Appellant's remaining convictions, and remand for

resentencing.

The trial court accurately summarized the relevant facts of this case as

follows.

> The two separate incidents in this case took place on December 7, 2014[] and September 16, 2015. [Both incidents involved Appellant's ex-girlfriend, ("Victim").  Appellant and Victim had a daughter together and, following their separation, the two engaged in a severe custody dispute which was ongoing when the two incidents occurred.]  The first incident took place on December 7, 2014 at 11:00 [p.m.].  On the day of the incident, [Victim] received numerous calls and text messages from Appellant.  At the time, Appellant and [Victim] were not in a relationship and [she] was living on Malcom Street in . . . Philadelphia[, Pennsylvania.]  Appellant was not living at [Victim's] house . . . and did not have permission to be at the residence.
>
> At 11:00 [p.m.], [Victim] was at her home with her fiancé when she heard a knock at the door. … [Victim] opened the door assuming it was her fiancé's sons arriving home from visiting a relative.
>
> Appellant ran up to the doorway and put his foot in the door, preventing [Victim] from [closing] the door.  [Victim] struggled with Appellant to close the door before trying to run back inside the house.  When Appellant pushed in the door he began cursing at [Victim], calling her the "B" word, and saying he wanted their daughter in addition to other things.  Appellant grabbed [Victim], causing her to fall backwards and hit her head on the step leading into the house.  While [Victim] was on the ground, Appellant climbed on top of her and [immobilized Victim] by pressing his knee onto [her] right hip area.  At this point, Appellant and [Victim] were face to face and Appellant began hitting and

_____

[5] 18 Pa.C.S.A. § 907(a).

punching [Victim] in the stomach, chest area, and arms, with a closed fist before choking her with both hands, making it difficult for [Victim] to breathe. Appellant began to cut [Victim's] left forearm area with an unidentified item that Appellant either found on the porch area or brought with him. [Victim] was five [] months pregnant at the time of the assault and Appellant knew she was pregnant by her physical appearance and this fact was reiterated by [Victim] during the attack.

Finally, Appellant ran down the street [because Victim's] fiancé came downstairs after hearing her screams[.] [Victim] immediately called the police to disclose the incident[.] The detectives showed a photograph of [] Appellant to [Victim] and [she] identified Appellant as her attacker to both the police and detectives. Injuries sustained by [Victim included] cuts on her left forearm. [Victim] initially refused medical treatment that night, but decided to see a doctor at the University of Pennsylvania Hospital the next day after she started bleeding and having pain.

The second incident took place on September 16, 2015 at 5:45 [p.m.]. [At that time, Victim] was living on North 22nd Street in . . . Philadelphia[, Pennsylvania]. Appellant was not living at the house . . . and did not have permission to be at the residence that evening.

At 5:45 [p.m.], [Victim] was outside her home on the way to the store when she saw Appellant crossing the field adjacent to her house [and] coming towards the steps. [Victim] tried to get inside the house, but Appellant ran up behind her and forced his way in[side]. The force in which Appellant used to push the door open caused [Victim's] toenail to come off when the door hit [her] foot. Appellant then began punching [Victim], causing her to fall. Once [Victim] was on the ground, Appellant got on top of her and pinned her legs down so the two were facing each other. [Victim] tried to get away, but was unable to move with Appellant on top of her. Appellant began choking [Victim] with both hands, causing [her] to have difficulty breathing. While he was choking [Victim], Appellant banged [her] head against the concrete floor three or four times. Appellant then grabbed a box cutter out of his pocket and cut [Appellant] on her arms, legs, and upper chest area. As Appellant was cutting and punching [Victim], she told him to get off of her and that he was hurting her. Appellant told [Victim] that he was going to kill her and that she "better not come to court." This threat was related to the pending criminal matter stemming

from the first incident on December 7, 2014, which was going to trial in November 2016.

Once Appellant noticed [Victim's] daughter at the top of the stairs and heard the dog barking, Appellant got off of [her] and ran away. [Victim] called the police to report the incident after Appellant left her house and the police came to [her] home to take her statement. The injuries [Victim] sustained included cuts on her body, a swollen arm and upper arm, cuts on her neck, cuts on her legs, and her toenail. [Victim] refused medical treatment because she was upset and overwhelmed, and instead went straight to see detectives. [Victim] explained what happened to the detectives that night and identified Appellant as her attacker. After [Victim] spoke with the detectives, she filed an emergency stay away order, which was later granted against Appellant.

Trial Court Opinion, 6/3/19, at 2-5 (internal citations omitted).

Based upon the foregoing, the Commonwealth charged Appellant with various offenses with respect to both incidents. Thereafter, on October 14, 2016, Appellant waived his right to a jury trial and proceeded with a bench trial. That same day, the trial court convicted Appellant of the aforementioned crimes.

On April 21, 2017, the trial court ordered Appellant to serve consecutive sentences of four to eight years of incarceration for each burglary conviction. "Appellant was [also] sentenced to ten [] years['] of reporting probation for aggravated assault, two [] years['] probation for simple assault, two [] years['] probation for [REAP], and five [] years['] probation for [PIC]." Trial Court Opinion, 6/3/19, at 1. The trial court ordered Appellant's periods of probation to run "concurrent to each other, but consecutive to the incarceration." *Id.* Thus, the trial court sentenced Appellant to an aggregate term of eight to 16 years of incarceration followed by "ten [] years reporting

probation with credit for time served." ***Id.*** Appellant filed a motion for reconsideration of his sentence on April 30, 2017. The trial court denied Appellant's motion by operation of law on August 30, 2017. This timely appeal followed.[6]

Appellant raises the following issues on appeal:

I. Did the trial court commit an error of law and violate state and federal due process by convicting Appellant of aggravated assault under 18 Pa.C.S.[A.] § 2702(a)(4)?

II. Did the trial court commit an abuse of discretion by denying Appellant's claim with respect to CP-51-CR0003547-2015 [which asserted] that the verdict was against the weight of the evidence?

III. Did the trial court commit an abuse of discretion by denying Appellant's claim with respect to CP-51-CR-0010605-2015 which asserted that the verdict was against the weight of the evidence?

IV. Did the trial court commit an abuse of discretion in imposing consecutive sentences of [four] to [eight] years' incarceration [for Appellant's] two burglary [convictions]?

Appellant's Brief at 4.

In Appellant's first issue, he challenges the legality of his sentence as it relates to his conviction of aggravated assault with a deadly weapon. An issue relating to legality of sentence presents a question of law for our review. ***Commonwealth v. Jacobs***, 39 A.3d 977, 982 (Pa. 2012) (citation omitted).

---

[6] Appellant filed a notice of appeal on September 13, 2017. On December 8, 2017, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 3, 2019.

"When addressing such questions of law, we employ a plenary scope of review, and our standard of review is *de novo*." **Id.**

Herein, Appellant argues that the trial court violated his state and federal due process rights by convicting him of aggravated assault with a deadly weapon under 18 Pa.C.S.A. § 2702(a)(4). Appellant claims that the Commonwealth originally charged him with a violation of 18 Pa.C.S.A. § 2702(a)(1) (attempting to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life), not 18 Pa.C.S.A. § 2702(a)(4) (attempting to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon). Appellant therefore asserts that, because the Commonwealth never charged him with a violation of Section 2702(a)(4), and it is not a lesser-included-offense of Section 2702(a)(1), the trial court committed an error of law when it convicted and sentenced him under Section 2702(a)(4). Appellant's Brief at 20-23. We are constrained to agree.

"The law is clear . . . that a court is without jurisdiction to convict a defendant of a crime for which he was not charged." **Commonwealth v. Serrano**, 61 A.3d 279, 287 (Pa. Super. 2013). Indeed, "[t]here are two requirements for subject matter jurisdiction as it relates to criminal defendants: competency of the court to hear the case, and formal and specific notice to the defendant." **Commonwealth v. McGarry**, 2017 WL 4562726, at *3 (Pa. Super. 2017) (citation omitted). Thus, "[t]o invoke the jurisdiction

of the court to try an accused for a criminal offense, 'it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged.'" ***Commonwealth v. Speller***, 458 A.2d 198, 203 (Pa. Super. 1983) (citation omitted). This is true unless the offense for which the defendant is convicted is considered a lesser-included-offense of the crime originally charged. ***See Commonwealth v. Sims***, 919 A.2d 931 (Pa. 2007) (holding that an attempt crime is a lesser-included offense of the substantive crime, and thus a defendant may be convicted of an attempted crime even if the Commonwealth charged him with the substantive offense but not attempt); ***compare Commonwealth v. Carter***, 393 A.2d 660 (Pa. 1978) (finding that because criminal trespass is not a lesser-included offense of burglary for notice purposes, a defendant charged with burglary, but not criminal trespass, cannot be convicted of criminal trespass).

In this case, it is undisputed that the Commonwealth charged Appellant with a violation of 18 Pa.C.S.A. § 2702(a)(1), not 18 Pa.C.S.A. § 2702(a)(4). At trial, however, the court adjudicated Appellant not guilty of violating Section 2702(a)(1) and subsequently convicted Appellant under Section 2702(a)(4). Specifically, the trial court stated:

> So, yeah, but it is not a[ felony one] aggravated assault because it doesn't quite make it, but [the] box cutter by itself makes it a[ felony two]. So I'm finding you guilty as a [felony two.]
>
> ***
>
> As I said, the aggravated assault is a[ felony two] because a box cutter is a deadly weapon.

N.T. Trial, 10/14/18, at 195-196. Section 2702(a)(4), however, is not a lesser-included-offense of Section 2702(a)(1). *See Commonwealth v. Ritchey*, 459 A.2d 828, 830 (Pa. Super. 1983) (holding that "subsection 2702(a)(4) assault is not a lesser[-]included[-]offense of subsection 2702(a)(1)"). Accordingly, because the Commonwealth did not charge Appellant with violating Section 2702(a)(4), and because it is not a lesser-included-offense of Section 2702(a)(1), we are constrained to vacate Appellant's conviction and sentence under Section 2702(a)(4) because the trial court lacked subject matter jurisdiction to adjudicate Appellant's guilt under that provision.[7]

In his second and third issues, Appellant claims that the guilty verdicts for the offenses stemming from the incidents which occurred on December 7,

---

[7] We recognize that Appellant's conviction under Section 2702(a)(4) could be sustained under certain circumstances. Indeed, this Court has previously held that criminal informations must be read in a common sense manner and their purpose is to provide the accused with sufficient notice to prepare a defense. *Commonwealth v. Einhorn*, 911 A.2d 960, 978 (Pa. Super. 2006). Thus, in general, a variance between the charges set forth in an information and the proof at trial is not fatal unless it misleads the defendant, involves an element of surprise that hinders the preparation of a defense, precludes anticipation of the prosecution's proof, or impairs a substantial right. *Commonwealth v. Jones*, 912 A.2d 268, 289 (Pa. 2006). Here, however, the record does not contain (1) the bill of information; (2) an affidavit of probable cause; or (3) transcripts of the preliminary hearing. Thus, we cannot determine whether Appellant did, in fact, have adequate notice of the precise nature of the charges against him. Nonetheless, the Commonwealth and the trial court both agree that Appellant's conviction under Section 2702(a)(4) was improper and should be vacated. *See* Commonwealth's Brief at 9-10; Trial Court Opinion, 6/3/19, at 6-7. As such, we need not determine whether Appellant's conviction is sustainable under the doctrine of a permissible variance between the charge in the information and the proof at trial.

2014 and September 16, 2015 were against the weight of the evidence. Specifically, Appellant challenges the trial court's credibility determinations and argues that Victim "was not believable" and "had a motive to lie." Appellant's Brief at 23-24. As such, Appellant argues that the trial court should have granted him a new trial. We disagree.

When considering a challenge to the weight of the evidence offered in support of a criminal conviction, our standard of review is well settled.

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because [another] judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge [confronted with a weight claim] is to determine [whether,] notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

**Commonwealth v. Windslowe**, 158 A.3d 698, 712 (Pa. Super. 2017) (quotations omitted), *appeal denied*, 171 A.3d 1286 (Pa. 2017). "To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Id.** (citations and internal quotations omitted).

Further,

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. ***See Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003), *cert. denied*, 542 U.S. 939[.] As an appellate court, we cannot substitute our judgment for that of the finder of fact. ***See id.*** Therefore, we will reverse a [] verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. ***See Commonwealth v. Passmore***, 857 A.2d 697, 708 (Pa. Super. 2004), *appeal denied*, 868 A.2d 1199 (Pa. 2005). Our appellate courts have repeatedly emphasized that "[o]ne of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence."

***Commonwealth v. Rabold***, 920 A.2d 857, 860–861 (Pa. Super. 2007), *affirmed*, 951 A.2d 329 (2008) (parallel citations omitted).

In this case, the trial court did, in fact, "concede[] that [Victim] was not the best witness." Trial Court Opinion, 6/3/19, at 8. The trial court, however, explained that it "did believe [her]." ***Id.*** In making its credibility determination, the trial court relied on Victim's ability to "consistently explain the incident[s] in a detailed manner during her testimony" and the fact that she "called the police immediately after each attack and fully disclosed the abuse she suffered." ***Id.***; ***see also*** N.T. Trial, 10/14/18, at 13-77. Moreover, the trial court noted that Victim's claims were substantiated by Officer Justin Kensey, the individual who responded to Victim's residence after the December 7, 2014 incident. ***See*** N.T. Trial, 10/14/18, at 78-84. Indeed, Officer Kensey testified that he "did not doubt" that a domestic dispute occurred and that he saw "fresh wounds on [Victim's] body." Trial Court

- 10 -

Opinion, 6/3/19, at 8. Our review of the certified record reveals that the trial court's assessment enjoys record support. For this reason, we conclude that the trial court properly exercised its discretion in denying Appellant's motion for a new trial based on the weight of the evidence.

In his final appellate issue, Appellant argues that the trial court abused its discretion in imposing its sentence for his burglary convictions. In particular, Appellant claims that his sentence is "manifestly excessive and unreasonable" because the trial court "only considered the seriousness of the crime" and failed to consider other mitigating factors such as his age, lack of criminal record, and his "sincere expression of remorse." Appellant's Brief at 31-32. Appellant's issue therefore implicates the discretionary aspects of sentencing. As this Court previously explained:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (internal case citations omitted).

- 11 -

Appellant has fulfilled the first, second, and third requirements of the above-mentioned four-part test. Appellant, however, failed to raise a substantial question. As this Court previously explained, to establish a substantial question, an "appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." **Commonwealth v. Cannon**, 954 A.2d 1222, 1229 (Pa. Super. 2008). Appellant failed to make such a showing. "[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."[8] **Id.** (citation omitted). Because Appellant failed to raise a substantial question, "a review of the merits of the discretionary aspects of his sentence is not warranted." **Id.**

Even if a substantial question were raised, however, we would conclude that Appellant is not entitled to relief. Our standard of review of a challenge to the discretionary aspects of sentence is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

---

[8] "This Court has held that a substantial question exists when a sentencing court imposed a sentence **in the aggravated range** without considering mitigating factors." **Commonwealth v. Rhoades**, 8 A.3d 912, 919 n.12 (Pa. Super. 2010) (emphasis in original), *citing* **Commonwealth v. Felmlee**, 828 A.2d 1105, 1107 (Pa. Super. 2003). Because Appellant's sentence is within the standard range, we conclude that no substantial question is raised. **See Rhoades**, 8 A.3d at 919, n.12.

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

\*\*\*

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports [("PSI report")] exist, we shall presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-761 (Pa. Super. 2014) (internal citations, quotations, original brackets and ellipsis omitted). Moreover, when sentencing a defendant to total confinement, a trial could must impose a punishment consistent with 42 Pa.C.S.A. § 9721(b). Thus, the trial court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under [S]ection 2155 (relating to publication of

guidelines for sentencing, resentencing and parole, risk assessment instrument and recommitment ranges following revocation)." *Id.*

Upon review of the sentencing hearing transcripts, we conclude that the trial court considered the relevant factors and did not abuse its discretion in imposing Appellant's sentence. The sentencing guidelines provide that the offense gravity score for burglary is nine. At the outset of the hearing, the court indicated that Appellant's prior record score was a four. N.T. Sentencing Hearing, 4/21/17, at 5. As such, for each of his burglary convictions, the guidelines range was 36 to 48 months, plus or minus 12 months. *Id.* Subsequently, the trial court received letters from Appellant's friends and family, and Appellant's mother spoke on his behalf and requested the court's leniency. *Id.* at 6-10. Appellant's counsel then spoke at length regarding Appellant's rehabilitative efforts while incarcerated. *Id.* at 10-14. Finally, Appellant testified. He apologized to the court for his behavior during trial and then detailed his progress while in custody and attempts at rehabilitation. *Id.* at 18-24.

Thereafter, the trial court stated that it "heard everything" presented. *Id.* at 25. Prior to issuing Appellant's sentence, the trial court also stated that it "reviewed the PSI [report], [Appellant's] [m]ental [h]ealth report, and [his] [p]rior [r]ecord score" and had "taken all that into consideration, including [Appellant's] rehabilitative needs." *Id.* Thus, it is clear that the trial court, through the benefit of the PSI report, "consider[ed] the particular circumstances of the offense[,] the character of the defendant," and other,

relevant factors, when issuing Appellant's sentence. ***Antidormi***, 84 A.3d at 760-761. We therefore discern no abuse of discretion.

Accordingly, in the case *sub judice*, because the trial court improperly convicted Appellant of aggravated assault with a deadly weapon, a crime for which he was never formally charged, we are constrained to vacate Appellant's conviction and sentence for that offense. Because we have vacated a conviction and sentence in a multiple count matter, and the trial court ran Appellant's probation periods concurrent with each other, but consecutive to incarceration, we have upset the trial court's overall sentencing scheme and, accordingly, we must remand for resentencing. We otherwise affirm Appellant's convictions and sentences for burglary, simple assault, REAP, and PIC.

Conviction and judgment of sentence vacated for aggravated assault with a deadly weapon. All remaining convictions and sentences affirmed. Case remanded for resentencing. Jurisdiction relinquished.[9]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/20

---

[9] The Prothonotary of this Court is directed to return the entire certified record to the trial court on remand.