J-S24026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS CONNERS | : | |
| | : | |
| Appellant | : | No. 1241 WDA 2020 |

Appeal from the Judgment of Sentence Entered July 22, 2019
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0001579-2018

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.:                    **FILED:  February 2, 2022**

Appellant, Nicholas Conners, appeals *nunc pro tunc* from the judgment of sentence entered in the Erie County Court of Common Pleas, following his jury trial convictions for four counts of possession with intent to deliver a controlled substance ("PWID"), three counts of possession of a controlled substance, one count of possession of drug paraphernalia, two counts of criminal attempt to commit PWID, one count of criminal use of communication facility; and his guilty plea to one count of drug delivery resulting in death.[1] We affirm.

The relevant facts and procedural history of this case are as follows.  On

_____

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780–113 (a)(30), (16), and (32), 18 Pa.C.S.A. §§ 901 (35 P.S. § 780-113(a)(30) related), 7512(a), and 2506(a); respectively.

Sunday, April 15, 2018, Diane Sampson returned to her home where she resided with her son, Joseph Samson. (N.T. Trial, 5/13/19, at 17). Upon entering the home, Ms. Sampson immediately noticed on the dining room table "a teaspoon with stuff in it, a little, tiny syringe and some kind of paper stuff beside it." (*Id.* at 22). Shortly thereafter, Ms. Sampson discovered her son unconscious with the telephone up to his ear. (*Id.*) Ms. Sampson immediately called 911. (*Id.*) The coroner determined that Joseph Samson "died of a drug toxicity, primarily involving heroin and fentanyl," and listed his cause of death as acute fentanyl toxicity. (*Id.* at 53).

At trial, Detective Matt Benacci testified that he is the coordinator of the Erie County Drug Task Force and had been a narcotics investigator for 17 years. (N.T. Trial, 5/14/19, at 7). Detective Benacci was notified that a drug overdose occurred at Ms. Sampson's home. (*Id.* at 8). Once the detective arrived at Ms. Sampson's home, he observed used drug paraphernalia and a small sandwich baggie which contained paper, specifically a coloring book page. The detective found drugs inside the coloring book page. (*Id.* at 9). Detective Benacci testified that he had never seen drugs packaged in a coloring book before. (*Id.*)

In addition to the drugs found at the scene, the police recovered the decedent's cellular phone. (*Id.*) Detective Benacci explained the importance of the cell phone as "[p]robably the most important" piece of evidence because it can serve as a "link between the victim and their dealer or anyone else who

may have information regarding what happened prior to or after the person's death." (*Id.*) A search of the decedent's cell phone revealed a contact with a name "Nick C" and a phone number. (*Id.*) Detective Benacci checked the police database for any "Nick C" with the same phone number, and he uncovered Appellant's name. (*Id.* at 10).

On the following day, April 16, 2018, Detective Benacci attempted to use the decedent's cell phone to pose as the decedent and contact Appellant. (*Id.* at 11). Detective Benacci intended to arrange a "buy bust" with Appellant, where the police would arrange a drug sale with Appellant and then arrest him immediately following the sale. (*Id.* at 13). When the police contacted Appellant's phone, however, police received a text message in response indicating that the message to Appellant was blocked and not received. (*Id.* at 14). Because Detective Benacci was unable to contact Appellant, he went to Appellant's residence to conduct surveillance. (*Id.* at 15). During the surveillance, Detective Benacci saw Appellant drive from his residence to a laundromat parking lot. (*Id.* at 16). Once Appellant parked, someone got into the backseat of his car, and Detective Benacci then approached the car and arrested Appellant. (*Id.* at 17).

A search of Appellant's car yielded a black bag located at Appellant's feet containing "numerous items of heroin and fentanyl and methamphetamines." (*Id.* at 19). In addition, the police searched Appellant, and found money, and a small "zip baggie that contained two quantities of

drugs, one of which was the heroin/fentanyl that was wrapped in a magazine paper, and the other—methamphetamines—was in the same coloring book paper" that the police recovered at the decedent's residence. (*Id.*) Detective Benacci stressed that the same packaging that was recovered at the decedent's home was found on Appellant's person. (*Id.* at 19-20).

After his arrest, Appellant agreed to speak with Detective Benacci, and the detective provided Appellant with written *Miranda*[2] warnings. (*Id.* at 91). During this interview, Appellant admitted that he sold the decedent drugs on the prior Friday and Saturday nights. (*Id.* at 96). Specifically, Detective Benacci testified that Appellant stated that he sold the decedent drugs on Saturday night, April 14th, between "10:00 to 11:00 P.M." (*Id.*)

Appellant testified in his defense that he was a drug dealer who typically sold methamphetamine and heroin. (N.T. Trial, 5/15/19, at 51). Appellant explained that he would package the drugs by placing the methamphetamine in coloring book paper, and the heroin in magazine paper. (*Id.* at 52). Appellant admitted that he sold the decedent methamphetamine on Friday April 13, 2018, but he denied selling the decedent any drugs on Saturday April 14th. (*Id.* at 53, 65). On cross-examination, Appellant conceded that on April 16th, the day he was arrested, he possessed a combined powder substance containing both heroin and fentanyl, which had been wrapped in magazine

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

paper. (***Id.*** at 93). Appellant also admitted that the decedent texted Appellant to purchase more drugs from him on Saturday April 14th. (***Id.*** at 78). Shortly after receiving the text message, Appellant and the decedent had a phone conversation. (***Id.***) Appellant conceded that during his interview with Detective Banacci he admitted that he sold the decedent drugs around 10:00 p.m., and slept the following day, which was Sunday, April 15th. (***Id.*** at 80).

On May 16, 2019, a jury found Appellant guilty of PWID and related offenses. The jury was hung on Count 1, drug delivery resulting in death, and the court declared a mistrial on that count. On July 22, 2019, Appellant entered a guilty plea to Count 1, drug delivery resulting in death. During the guilty plea hearing, Appellant admitted that he sold heroin and/or fentanyl to the decedent causing his death on or around April 14, 2018. (***See*** N.T. Guilty Plea Hearing, 7/22/19, at 6). Following the plea hearing, the court sentenced Appellant to an aggregate term of 7-14 years' incarceration followed by a consecutive one year of probation.

Following the filing of a collateral relief petition, the court reinstated Appellant's direct appeal rights *nunc pro tunc* on July 20, 2020. On August 10, 2020, Appellant filed a motion to restore his post-sentence motion rights *nunc pro tunc*. The court granted Appellant's requested relief on August 19, 2020. On August 28, 2020, Appellant timely filed a post-sentence motion *nunc pro tunc*, and motion to compel discovery, which the court denied on

October 23, 2020. On October 30, 2020, Appellant filed a motion for reconsideration of his motion to compel discovery. The court denied that motion on November 13, 2020.

Appellant timely filed a notice of appeal *nunc pro tunc* on November 18, 2020. The next day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied.

Appellant raises the following issues for our review:

> Whether the evidence was insufficient to support the guilty verdict of Possession with Intent to Deliver Heroin/Fentanyl (Count 2) to Victim Joseph Samson on April 14, 2018, where there was no direct evidence that Appellant was in contact with Samson on this day, and text messaging evidence used by the Commonwealth suggests that the heroin/fentanyl imbibed by Samson was acquired by an unknown third party, and the drugs found on Appellant were packaged differently from the packaging found at Samson's home.
>
> Whether the finding of guilt of Possession with Intent to Deliver Heroin/Fentanyl was against the weight of the evidence (Count 2) where there was no direct evidence that Appellant was in contact with Samson on this day, and text messaging evidence used by the Commonwealth suggests that the heroin/fentanyl imbibed by Samson was acquired by an unknown third party, and the drugs found on Appellant were packaged differently from the packaging found at Samson's home.
>
> Whether the Trial Court erred in Denying Appellant's request to withdraw his guilty plea when said plea was not made voluntarily, knowingly or intelligently.

(Appellant's Brief at 5).

In his first two issues combined, Appellant argues the Commonwealth

- 6 -

failed to present sufficient evidence at trial to prove Appellant's conviction for PWID concerning the sale of heroin/fentanyl to the decedent on April 14, 2018. Appellant avers the Commonwealth did not present any direct testimony that placed Appellant with the decedent on April 14th. Appellant admits he sold the decedent methamphetamine on April 13th, but he contends that the evidence failed to establish that Appellant also sold the decedent heroin/fentanyl on that day. Appellant maintains that he spent the entire day of April 14th with his wife and stepson, and that he never saw the decedent or contacted him after selling him drugs on April 13th.

Appellant further challenges the weight of the evidence concerning this PWID conviction. Appellant contends that the Commonwealth's case relied on text messages exchanged between Appellant and the decedent on April 13, 2018, and he insists that the drug packaging found near the decedent differed from the drug packaging found when Appellant was arrested. Appellant concludes this Court should vacate his convictions and/or remand for a new trial. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the

Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa.Super. 2019) (quoting

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal*

*denied*, 613 Pa. 642, 32 A.3d 1275 (2011)).

When examining a challenge to the weight of the evidence, our standard of review is as follows:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. Our appellate courts have repeatedly emphasized that one of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Rabold*, 920 A.2d 857, 860 (Pa.Super. 2007), *aff'd*, 597

Pa. 344, 951 A.2d 329 (2008) (internal citations and quotation marks

omitted).

Moreover, where the trial court has ruled on the weight

claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert*. *denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted).

The Controlled Substance, Drug, Device and Cosmetic Act defines PWID, in relevant part, as follows:

### § 780-113. Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

\* \* \*

35 P.S. § 780-113(a)(30). Thus, "[t]o establish the offense of [PWID], the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Commonwealth v. Perez*, 931 A.2d 703, 707-08 (Pa.Super. 2007). The Commonwealth can establish the identity of the controlled substance at trial by circumstantial evidence. *Commonwealth v. Rickabaugh*, 706 A.2d 826,

- 9 -

844 (Pa.Super. 1997), *appeal denied*, 558 Pa. 607, 736 A.2d 603 (1999). ***See also Commonwealth v. Bricker***, 882 A.2d 1008, 1015 (Pa.Super. 2005) (holding Commonwealth can establish all elements of PWID by circumstantial evidence).

Instantly, in its opinion denying Appellant's post-sentence motions challenging the sufficiency and weight of the evidence, the trial court reasoned:

> Here, testimony at trial established that on April 15, 2018, heroin/fentanyl, folded inside a coloring book page, was found at the scene of an overdose death. The [decedent]'s phone had a contact saved as "Nick C" and the phone number was associated with [Appellant]. When [Appellant] was taken into custody, heroin/fentanyl was discarded from his person during transport. On [Appellant]'s person were drugs wrapped in coloring book paper. When [Appellant] was interviewed by the police, he acknowledged selling drugs to the [decedent] on April 14, 2018. Thus, the Commonwealth set forth sufficient evidence to prove beyond a reasonable doubt that [Appellant] possessed heroin/fentanyl with the intent to deliver the substance to another person, and thus there was sufficient evidence to sustain a conviction on Count 2.
>
> *                *                *
>
> [Additionally, f]or the reasons set forth above, [Appellant]'s conviction at Count 2 [PWID] was not unsupported by the weight of the evidence, nor was it so contrary to the evidence as to shock one's sense of justice.

(Trial Court Opinion, filed October 23, 2020, at 2). The record supports the trial court's rationale.

Here, Appellant does not dispute that he possessed and sold drugs to the decedent. Rather, Appellant's main complaint is that the Commonwealth

failed to prove that he sold heroin/fentanyl to decedent or had contact with him after April 13th. Nevertheless, Detective Benacci testified that Appellant stated during his post-arrest interview that he sold the decedent drugs on Friday, April 13th **and** Saturday, April 14th. The jury was free to reject Appellant's testimony to the contrary and to accept the testimony of the Commonwealth's witnesses. *See Jackson, supra*. The circumstantial evidence also established that Appellant sold the decedent drugs on April 14th based on text messages between the decedent and Appellant. *See Bricker, supra*. Further, the jury was free to evaluate the evidence concerning the packaging of the different drugs and identify the drugs sold by Appellant to the decedent on April 14th as heroin/fentanyl. *See Rickabaugh, supra*. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's conviction for PWID. *See Jackson, supra*. Likewise, we will not disturb the trial court's decision to deny Appellant's challenge to the weight of the evidence. *See Champney, supra*; *Rabold, supra*.

In his third issue, Appellant argues the court should have granted his post-sentence motion to withdraw his guilty plea to Count 1, drug delivery resulting in death, because this plea was not knowingly, intelligently, or voluntarily entered. Appellant contends he entered a plea to this offense only after the court declared a mistrial because the jury was unable to render a unanimous verdict on this count. Appellant insists he is innocent of this

offense, and that his plea counsel convinced him to plead guilty because Appellant had no chance of winning at retrial. Further, Appellant claims that plea counsel informed Appellant that if he pled guilty, he would receive the benefit of a sentencing recommendation of 7-14 years' incarceration to run concurrent to his sentences for any prior convictions. Instead, the court ordered Appellant to serve 7 to 14 years' incarceration to run consecutive to a prior sentence of 3½ to 11 years' imprisonment. Appellant maintains that he did not receive the benefit of the plea bargain as he understood it, and the court's refusal to allow him to withdraw his plea constitutes a manifest injustice. Appellant concludes that he is entitled to some form of relief. We disagree.

"[A] defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified." *Commonwealth v. Pantalion*, 957 A.2d 1267, 1271 (Pa.Super. 2008). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." *Id.* (quoting *Commonwealth v. Muhammad*, 794 A.2d 378, 383 (Pa.Super. 2002)). The Pennsylvania Rules of Criminal Procedure mandate that pleas are taken in open court and the court must conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. *Commonwealth v. Hodges*, 789 A.2d 764 (Pa.Super. 2002). Specifically, the court must affirmatively demonstrate a defendant understands: (1) the

nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the judge is not bound by the terms of the agreement unless he accepts the agreement. ***Commonwealth v. Watson***, 835 A.2d 786 (Pa.Super. 2003). This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. ***Muhammad, supra***. A guilty plea will be deemed valid if an examination of the totality of the circumstances surrounding the plea shows that the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. ***Commonwealth v. Rush***, 909 A.2d 805 (Pa.Super. 2006).

Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing and bears the burden of proving otherwise. ***Commonwealth v. Pollard***, 832 A.2d 517 (Pa.Super. 2003). A defendant who decides to plead guilty is bound by the statements he makes while under oath, "and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." ***Id.*** at 523. "Our law does not require that a defendant be totally pleased with the outcome of his decision to plead guilty, only that his decision be voluntary, knowing and intelligent." ***Id.*** at 524.

Instantly, Appellant executed a written guilty plea colloquy fully

communicating his decision to plead guilty. (*See* Appellant's Statement of Understanding Rights, July 22, 2019, at 1 unpaginated). In the statement, Appellant acknowledged the voluntariness of his plea and recognized the rights he was relinquishing by pleading guilty, including his right to a trial by judge or jury and his right to ensure the Commonwealth met its burden of proof. Significantly, in the written statement, Appellant acknowledged the following: "I understand that the maximum sentence for the crime(s) to which I am pleading guilty/no contest is Count 1: $250,000/40 years." (*Id*). Appellant further acknowledged:

> I understand that any plea bargain in my case is set forth here and that there has been no other bargain and no other promise or threat of any kind to induce me to plead guilty/no contest. The only plea bargain in my case is pleading guilty to Count 1. In exchange, the Commonwealth will recommend a sentence of 7-14 years concurrent to the charges the [Appellant] was convicted of at trial, with a term of probation at the discretion of the [c]ourt.

(*Id.*)

On the same day, Appellant engaged in an oral guilty plea colloquy before the court. (*See* N.T. Guilty Plea Hearing, 7/22/19). During the hearing, Appellant affirmed his decision to plead guilty and acknowledged his understanding of the plea agreement and his potential sentence. (*Id.* at 5). Further, the Commonwealth recited the factual basis for the plea. (*Id.* at 6). Appellant confirmed that he wished to plead guilty based upon the facts as stated by the Commonwealth. (*Id.* at 7). Appellant also confirmed that he had completed and signed the written plea colloquy, and he understood the

consequences of entering his plea. (*Id.* at 4). Appellant further stated that he understood that the court did not have to sentence him according to the Commonwealth's recommendation. (*Id.* at 11).

Here, the totality of the circumstances demonstrates that Appellant entered a knowing, voluntary, and intelligent guilty plea. *See Rush, supra*; ***Muhammad, supra***. Additionally, the court sentenced Appellant in accordance with the plea bargain. Nothing in Appellant's plea agreement precluded the court from imposing Appellant's sentence at Count 1 consecutive to an **unrelated** sentence Appellant was serving. Therefore, the court properly denied Appellant's post-sentence motion seeking to withdraw his guilty plea. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/2/2022